## MINEHAN v. HILL.

(Supreme Court, Appellate Division, Third Department. May 3, 1911.)

1. CONTRACTS (§ 56*)—CONSIDERATION—MUTUAL PROMISES.

An agreement between one to whom decedent had contracted to will' her property in consideration of support and decedent's heir that, because it was unknown whether decedent had left a will, her property should be divided equally between them, was supported by sufficient consideration, to wit, the mutual promises of the parties.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 344–353; Dec. Dig. § 56.*]

2. COMPROMISE AND SETTLEMENT (§ 6*)—CONFLICTING CLAIMS.

Where plaintiff contracted to furnish decedent support for the rest of her life in consideration of her agreement to will her property to plaintiff, and, after decedent's death, before it was known whether she had left a will, plaintiff contracted with decedent's sole heir to divide the property with her, such agreement was valid as a compromise of a bona fide claim to settle the rights of the parties without litigation.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 35–50; Dec. Dig. § 6.*]

3. HUSBAND AND WIFE (§ 129*)—EARNINGS OF WIFE—EMANCIPATION.

Where plaintiff's husband was present and heard plaintiff make an agreement with decedent to provide decedent with a home and support for the rest of her life in consideration of decedent's contract to will plaintiff the balance of her property at death, and the husband never made any claim to any part of decedent's property, he would be deemed to have assented to his wife doing such business on her own account and retaining the fruits of her contract.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 129.*];

4. COMPROMISE AND SETTLEMENT (§ 6*)—REQUISITES—VALIDITY OF CLAIM.

It is not essential to the validity of a compromise and settlement that the claim, if bona fide, be valid or enforceable in law.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 35–50; Dec. Dig. § 6.*]

5. COMPROMISE AND SETTLEMENT (§ 9*)—VALIDITY—WAGERS.

Where decedent agreed to will her property to plaintiff in consideration of support, and after decedent's death, it being unknown whether she had left a will, it was agreed between plaintiff and decedent's sole heir that the estate should be divided equally between them in settlement of their claims, such agreement was not objectionable as a wager as to whether decedent had left a will in plaintiff's favor.

[Ed. Note.—For other cases, see Compromise and Settlement, Dec. Dig. § 9.*]

6. COMPROMISE AND SETTLEMENT (§ 16*)—EFFECT—SURRENDER OF CLAIM.

Decedent having contracted to will her property to plaintiff in consideration of support, and on her death, it not being known whether she had done so or not, plaintiff agreed with decedent's sole heir to divide the property with her, such agreement, when consummated, constituted a discharge of any claim that plaintiff might have against decedent's estate for services rendered in caring for decedent during her life, in case she had failed to comply with her contract to will.

[Ed. Note.—For other cases, see Compromise and Settlement, Dec. Dig. § 16.*]

Appeal from Trial Term, Saratoga County.

Action by Bertie Minehan against Mary E. Hill, individually and as administratrix of Eliza Bagley, deceased. From a judgment dis-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

missing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

John B. Holmes, for appellant.
Isaiah Fellows, for respondent.

HOUGHTON, J. Eliza Bagley and James, her husband, in 1902 executed mutual wills, each making the other sole devisee and legatee. James died in March, 1905, and Eliza became the owner of a farm and some personal property. The plaintiff was her cousin, and, after the death of her husband, Eliza proposed to make her home with the plaintiff. The plaintiff claims that, in consideration of providing a home and caring for her, Eliza agreed to make a will giving her all of her property at her death. Eliza spent a portion of her time at plaintiff's house, and certain things were done for her comfort and welfare for about a year, when she died.

[1] Immediately on her death, the defendant, who was her only heir at law and next of kin, came to the plaintiff's house, and a conversation was had respecting a will and the disposition of the property of the deceased. The plaintiff says that the defendant asked her if Eliza had made a will, and that she told her she did not know, and that the defendant replied, if a will had been made, she knew the plaintiff would get everything, but, if there was no will, she, the defendant, would get it because she was the only heir at law, and that the defendant admitted Eliza had never liked her and never intended her to have any of her property, and that the defendant said: "It is between me and you, and the best thing we can do is to go out and settle it between ourselves." Inquiry was made as to who the lawyer of the deceased had been, and they finally went to him and had him draw an agreement, under seal, which both signed and acknowledged, reciting that Eliza Bagley had died, and that the plaintiff was a cousin and the defendant a niece, and that it was unknown whether Eliza had died intestate, and providing as follows:

"Now, therefore, in consideration of the sum of one dollar, each to the other in hand paid, the receipt whereof is hereby acknowledged, it is mutually covenanted and agreed, as follows: That the estate, real and personal, of said Eliza Bagley, deceased, shall be divided equally between the parties to this agreement, and if it shall be ascertained that said Eliza Bagley left a last will and testament giving, bequeathing or devising to one of the parties to this agreement more than to the other, then each will execute to the other such transfers, assignments, bills of sale, deeds and other legal instruments as shall be necessary to carry into effect this agreement; it being understood and agreed, that said Bertie Minehan shall receive one half of the estate, real and personal, of said Eliza Bagley, deceased, and said Mary E. Hill shall receive the remaining half of said estate, real and personal; but this agreement shall not be construed to make either of the parties hereto in any way liable for any part of the estate of said Eliza Bagley, deceased, real or personal, which shall be given or devised by her to other person or persons than the parties to this agreement."

The version of the defendant as to how this agreement came to be executed differs somewhat from that of the plaintiff, and she says that

the plaintiff told her that Eliza did not intend that she, defendant, should have any of her property, and that the defendant asked if Eliza had made a will, and the plaintiff replied that she did not know whether there was one or not, but, if she had made one that she, plaintiff, would have all the property. Eliza had not made any other will than the one which was inoperative because of her husband's death prior to her own decease, and her property passed to the defendant as sole heir and next of kin, but the defendant refused to surrender any part of it to the plaintiff. This action was brought to compel the defendant to turn over one-half the personal property to the plaintiff and to execute a deed of an undivided half of the real property and for a partition, and resulted in a dismissal of the complaint on the ground that the agreement above set forth was void because it was without consideration.

We are of opinion the contract was a valid one, and that upon the evidence adduced the learned trial court erroneously dismissed the plaintiff's complaint.

It is difficult to see why the agreement does not come within the principle laid down in Briggs v. Tillotson, 8 Johns. 304, and Coleman v. Eyre, 45 N. Y. 38, and Smith v. Smith, 36 Ga. 184, 91 Am. Dec. 761, and why it is not a valid one because the promise of the one made a good consideration for the promise of the other.

[2] But it is unnecessary to place our decision upon this narrow ground because the extrinsic facts show that the agreement was one of compromise of conflicting claims. The plaintiff gave proof tending to show that Eliza Bagley had agreed to will her all of her property in consideration of giving her such board and care as she should desire during her lifetime, and that plaintiff had performed her part of the bargain. Whether such contract was sufficiently specific to warrant a decree of specific performance, or whether the plaintiff had simply a claim for the value of services performed, is unimportant. Such services as the plaintiff rendered and such board as she may have furnished did not necessarily belong to the plaintiff's husband, as the defendant urges.

[3] The husband was present and heard the bargain and never has made and now makes no claim, and it is fair to say that, if any emancipation was necessary, he must be deemed to have assented to his wife doing business on her own account and retaining the fruits of her contract. It does not appear that the plaintiff explained to the defendant the contract which she claimed to have had with Eliza, but it is apparent that the defendant believed that plaintiff had some sort of claim, and realized that she had not been in the good graces of the deceased, and that, if there was any will, it was likely to be in the plaintiff's favor, and that she herself would be cut off with only a small portion of the property or none at all. The plaintiff very frankly stated that she did not know whether the deceased had made a will or not, and thereby fulfilled the bargain which she claimed had been made; but it is perfectly apparent that the plaintiff believed she had some claim to the property either through a will or through the bargain itself.

[4] Such claim being a bona fide one, so far as consideration for the compromise is concerned, it does not matter whether the claim was much or little, or for that matter good or bad. It is not necessary in order to uphold a compromise agreement based upon a surrender or composition or compromise of a claim that the claim should be a valid one, or one that can be enforced at law. A promise made upon a settlement of disputes and to prevent litigation is made upon a good consideration, and the settlement of a doubtful claim will uphold a promise to pay a stipulated sum or do any other lawful act. White v. Hoyt, 73 N. Y. 505, 514. Courts from the earliest times have favored compromises of bona fide disputes, and have held agreements therefor to be founded upon good consideration irrespective of the validity of the claim which was compromised. Goilmere v. Battison, 1 Vernon, 48; Cann v. Cann, 1 Williams, 723; Penn v. Lord Baltimore, 1 Vesey Sr. Ch. 444; Russell v. Cook, 3 Hill, 504; Hoge v. Hoge, 1 Watts (Pa.) 163, 216, 26 Am. Dec. 52; Leach v. Fobes, 11 Gray (Mass.) 506, 71 Am. Dec. 732; Sears v. Grand Lodge A. O. U. W., 163 N. Y. 374, 57 N. E. 618, 50 L. R. A. 204. Judges have stated the rule in various language, all however to the same tenor. In Russell v. Cook, supra, Cowen, J., says:

"In such cases it matters not on which side the right ultimately turns out to be. The court will not look behind the compromise."

In speaking of a contract of compromise under a will contest Bigelow, J., in Leach v. Fobes, supra, says:

"As they (such contracts) contribute to the peace and harmony of families and to the prevention of litigation, they will be supported in equity without an inquiry into the adequacy of the consideration on which they are founded."

Gibson, C. J., in Hoge v. Hoge, supra, says:

"The compromise of a doubtful title when procured without such deceit as would vitiate any other contract concludes the parties, though ignorant of the extent of their rights."

And Bartlett, J., in Sears v. Grand Lodge A. O. U. W., supra, says:

"Compromises of disputed claims fairly entered into are final, and will be sustained by the courts without regard to the validity of the claims."

There is no proof that the plaintiff was guilty of any misrepresentation or deceived the defendant in any way. On the contrary, it appears that, although the defendant is now loath to perform the agreement, she was the one who was most anxious to enter into it. It is true that neither knew what her absolute rights were. The defendant knew, however, that, if there was a will giving the property to the plaintiff, she could get nothing, and the plaintiff realized that if there was no will the defendant would take all of the property, subject to whatever rights she might have under the agreement which she claimed to have made with the deceased. To avoid litigation and controversy, the parties, without fully realizing perhaps how commendable their action was, entered into an agreement for equal division no matter what the situation might be. On the death of Eliza, the title to the property was in the defendant as heir and next of kin if there was no will, and, if there was a will in plaintiff's favor, it was in her, and

the parties were not dealing with a mere expectancy or concerning property in which neither had any interest.

[5] The contract was not a wager as to whether or not the deceased had left a will in the plaintiff's favor, as the defendant insists.

[6] Nor will the plaintiff retain her claim if the defendant shall transfer to her one-half the estate of the deceased, as the respondent fears. The effect of the agreement, if valid, is to wipe out the plaintiff's claim, whatever it may be. The complaint is framed in a two-fold aspect, and asks if there should be no division of the property that the plaintiff's claim be enforced.

If we are right in our conclusion that the agreement was one of compromise, and that it was founded upon a sufficient consideration, it follows that the judgment must be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.