In the Matter of the Judicial Settlement of the Account of ELIZABETH ANN WATERS, as Administratrix, etc., of FRANK E. WATERS, Deceased.

WILLIAM H. WATERS and ELIZABETH ANN WATERS, as Administratrix, Appellants; GERTRUDE W. BLAKE and GENEVIEVE G. PLATT, Contestants, Respondents.

First Department, July 11, 1918.

Decedent's estate — agreement respecting partnership accounting — agreement of next of kin of deceased partner to accept payment from surviving partner and to release claims — final accounting of administratrix entered pursuant to said agreement — Surrogate's Court — jurisdiction — when surrogate cannot set aside agreement alleged to be procured by fraud — practice — validity of agreement not determined upon affidavits — when issues should first be determined by Supreme Court.

Where all persons interested in the estate of a decedent, excluding infants, agreed that moneys of the estate should be continued in a business in which the decedent had been a partner, the business to be conducted by the surviving partner, and after the business had been successfully con-

ducted with a profit said parties entered into a formal written agreement under seal and acknowledged whereby they agreed to accept from the surviving partner certain sums and to release all their claims against the partnership, the agreement of interested minors to be subject to the approval of the surrogate, and thereafter the administratrix made an accounting upon the basis of said written agreement which accounting was judicially approved and a distribution of assets directed pursuant to said written agreement, the same being done with the concurrence of the special guardian of the minors, an adult who was a party to said formal agreement is not entitled to have the decree opened for the purpose of surcharging the accounts of the administratrix upon the ground that the agreement itself had been obtained by misrepresentation and fraud, there being no allegation of facts establishing any fraud but merely the conclusions of the petitioner, and especially so where the attack was directed solely against the written agreement and the petitioner does not assert that the decree of the surrogate settling the account pursuant to the agreement had been procured by any fraud or deceit practiced upon the surrogate, or that any error or mistake had been committed.

Moreover, the surrogate should not have opened the decree upon the theory that the administratrix was in default in failing to file her answering affidavits before the time had expired when as a matter of fact her time to file the affidavits had been extended by stipulation so that the time had not expired.

Although under subdivision 6 of section 2481 of the Code of Civil Procedure, as then in force, the surrogate was empowered to open, vacate or modify a decree or order of his court, the powers conferred by the section should have been exercised only in a like case and in the same manner as a court of record or of general jurisdiction exercises the same power, and hence there was no power to open the decree when there was no suggestion of any fraud perpetrated upon the surrogate, or on the execution of the waivers of the service of citation on accounting, or any fraud in the conduct of the proceeding.

The practice of initiating proceedings to vacate decrees of the Surrogate's Court by order to show cause or notice of motion has been recognized for many years.

Even if it be assumed that the surrogate had power under the statute aforesaid to vacate his own decree because of fraud he had no power to adjudge the written agreement itself to be invalid upon that ground, for its validity should have been judicially determined on a proper trial.

Nor can the order vacating the accounting be sustained under section 2472a of the Code of Civil Procedure, as it stood in September, 1910, conferring jurisdiction upon a judicial account or a proceeding for the payment of a legacy, to ascertain the title to any legacy or distributive shares, etc., for the surrogate was required to order the trial of any controverted question of fact of which either party has constitutional right of trial by jury and seasonably demands the same.

Even assuming that the surrogate had jurisdiction he should not have exercised it when in the petition for the order to vacate the final accounting it is stated that an action has been begun in the Supreme Court against the administratrix by the petition to set aside the alleged fraudulent agreement in which action issue has been joined. As the Supreme Court first acquired jurisdiction of the controversy as to the validity of the agreement the issue should be there determined and proceedings in the Surrogate's Court should be stayed until such decision.

APPEAL by William H. Waters and another from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 6th day of July, 1917, confirming the supplemental report of a referee and surcharging the accounts herein, with notice of intention to bring up for review an order entered in the office of said Surrogate's Court on or about the 21st day of September, 1911, as resettled by an order entered on or about the 27th day of June, 1913, vacating a decree herein, and also with notice of intention to bring up for review an order entered in said clerk's office on or about the 13th day of December, 1911, denying a motion to vacate and set aside a prior order, and also with notice of intention to bring up for review an order entered in said office on the 29th day of August, 1916, modifying the first report of the referee herein and remitting the said report for correction.

*Samuel Seabury* of counsel [*Arnold Lichtig* with him on the brief], for the appellant William H. Waters.

*Joseph T. Ryan,* for the administratrix, appellant.

*John J. Curtin,* for the respondents.

DOWLING, J.:

Frank E. Waters died at the city of New York, intestate, on September 3, 1906. His mother, Elizabeth Ann Waters, was appointed administratrix of his estate on November 24, 1906. He left him surviving as next of kin his mother, four brothers (William H., Martin J., Raymond H. and Howard P.) and three sisters (the respondents Gertrude G. Blake and Genevieve G. Platt [formerly Waters] and also Elizabeth A. [referred to as Bessie] Waters). Deceased had been engaged in business for about five years, in partnership with William H.

Waters, under the firm name of Frank E. Waters & Bros., dealing in hatter's fur, decedent's interest being two-thirds, that of his brother one-third. The family all lived together except a daughter who went to boarding school, and their household expenses were all paid from the firm funds, save certain amounts which were paid weekly by decedent. The payments thus made practically exhausted all the profits of the business. The net value of the business as of August 31, 1906, a few days before decedent's death, has been computed from the books at $1,659.13. The net earnings for the last seven months of 1905 were but $1,233.72, while the amount drawn for the expenses of the household during that period was $1,481.05, and the partners' accounts were debited with $1,976.52, leaving a debit against capital account for that time of $2,223.85. After the administratrix had qualified the condition of the business was such that upon a winding up of its affairs but little would have been available for distribution among the next of kin. Therefore, an agreement was entered into between the administratrix of the estate (acting by the advice of her counsel) and William H. Waters, the surviving partner, whereby Waters was to continue the firm's business under the same name and at the same premises, and two-thirds of the profits were to go to the estate while one-third was to go to Waters, who was to receive no salary for his services, nor has he received any. All of the adult next of kin consented to the continuance of the business under this arrangement and accepted money and other benefits therefrom. But the administratrix never received any other authorization to continue the interest of the deceased in the business, and the continuance thereof was solely the act of the adult next of kin. The family continued to live together, save as to two married children, and the expenses of the household came from the business and were disbursed by the mother, as theretofore. Both of the contestants and respondents herein were of full age at the time of decedent's death. The family thus lived in apparent harmony, most of them being supported from the business and all of them profiting therefrom. The affairs of the partnership prospered under the direction of Mr. Waters, new customers being found and new avenues of trade being developed, so that from the time

of decedent's death until December 17, 1910, the profits aggregated $38,479.74. For the three years preceding December 17, 1910, the average annual profits were $9,054.04, whereof the estate's two-thirds amounted to $6,036.03. On December 17, 1910, and, as is claimed, after thorough discussion and complete understanding of the terms and conditions of the proposed arrangement by all the adult next of kin, an agreement in writing was entered into by all of them, under seal and duly acknowledged. The only persons interested who did not join in the execution thereof were Elizabeth A. (" Bessie ") Waters and Howard P. Waters, who were still minors, but they also had full knowledge of the agreement. Thereunder, after recitals of the various steps in the administration of the estate, of ·the support and extent of expenditures for the household, of the advances to the various next of kin, of the receipts of certain amounts from a .life insurance policy and the sale of an automobile, there was a statement of the amounts due to the various next of kin, set forth in detail, and a further statement that the parties interested had agreed that after payment of such amounts by William H. Waters, the business should thereafter be his and be carried on for his sole benefit and that all the parties would execute to him an assignment of all their shares therein and a release of their claims, while it was further recited that William H. Waters had agreed to pay his mother for life the sum of $40 per week, in discharge of all her claims against him " in respect of the said partnership and of the good will thereof." The agreement as to the minors Howard P. Waters and Elizabeth A. Waters was subject to the approval of the surrogate of New York county. The agreement then provided in the most formal and complete manner, for the purpose of adjusting and settling all differences and disputes as to the proper division of the assets of the decedent, that (1) inasmuch as the minor Elizabeth A. Waters had been at boarding school and had not had the full benefit of the expenditures of $10,307.50 paid to support the household, each of the other next of kin should contribute the sum of $150, making in all $1,050, which was to be paid to her in addition to a balance due her of $260.59; (2) out of the share of Howard P. Waters was to be deducted the sum of $400

to be paid his mother for her services in managing the household, two of his brothers having already paid similar amounts; (3) there was further to be deducted from the share of Howard P. Waters the sum of $100 for money advanced him by William H. Waters; (4) there was to be deducted from the share of Genevieve G. Waters the sum of $500, to be paid to the mother for her services in managing the household, the balance to be held in trust for said daughter, who was to board with the mother and be supplied by her with $3 a week for other expenses, while if the daughter married within two years the principal was to be paid to her at once, less any advances; (5) William H. Waters agreed to pay his mother $40 a week for life; (6) the claims against the estate, commissions of administratrix and expenses of administration were to be deducted in equal part for the shares of the next of kin; (7) William H. Waters and Gertrude G. Blake waived all claims to any contributions from the other next of kin because the two children named had not shared fully in the benefits accruing from the maintenance of the household out of the estate funds and had not shared at all in the distribution of a further sum of $3,763; (8) Martin J. Waters waived any claim to contribution because he had not been at home for some months; (9) Raymond H. Waters was to have the option of leaving the balance of his share in the business, if William H. Waters so agreed; (10) the parties further admitted " that the partnership accounts of the said William H. Waters, as herein ascertained, are correct, and they agree that they will, on payment of the sums due to them, as ascertained by this agreement, and in consideration of the payment of the sum owing to said administratrix, execute an assignment to the said William H. Waters of all their shares and interests in the said partnership business, and the good will thereof, by which assignment they will release the said William H. Waters from all further claims in respect of the said business and covenant not to molest or trouble him in the future, or request any payments of moneys out of the said business, nor interfere with him in the conduct of said business, and they and each of them agree that they will endeavor to procure the execution of a similar instrument by the general guardian of said minors when appointed;" (11) the agreement was expressly made

First Department, July, 1918.    [Vol. 183.

subject to the approval of the surrogate of New York county so far as regarded the minors Howard P. Waters and Elizabeth A. Waters. The agreement recited that it was made by " Elizabeth Ann Waters, residing at No. 500 West 143rd Street in the Borough of Manhattan and City of New York, administratrix of the estate of Frank E. Waters, deceased, party of the first part," but it was executed and acknowledged by her individually.

Elizabeth Ann Waters, as administratrix, thereupon prepared and caused to be filed her account of proceedings wherein the various amounts appeared as recited in the agreement aforesaid and which varied in no way from the basis upon which the agreement was made and which showed the amounts of balances to be paid to the next of kin complying in all respects with the agreement. The account was affirmed as of the date of December 22, 1910, and Schedule G thereof set forth the making of the agreement in question which was filed with the account marked " A," and the distribution of the balance of the estate was stated by the administratrix to be proposed to be made in accordance with such agreement subject to the approval of the surrogate. Waivers of issuance and service of a citation were executed and acknowledged by Elizabeth Ann Waters, Martin J. Waters, William H. Waters, Gertrude G. Blake, Genevieve G. Waters and Raymond H. Waters, being all the adult next of kin. The waiver of Elizabeth Ann Waters was dated and acknowledged December 28, 1910. The waivers of the other next of kin were executed and acknowledged December 22, 1910. The petition for accounting was affirmed to under date of December 22, 1910, and showed that Howard P. Waters and Elizabeth Ann Waters were still minors over the age of fourteen years, having no general guardian. A citation was issued dated December 22, 1910, and Frank T. Fitzgerald was appointed special guardian of the two minors. He made his report dated January 13, 1911, wherein he stated that he had examined the petition, account, vouchers and other papers on file and made himself fully acquainted with the rights and interests of his wards, and that in his opinion the account was correct and properly stated the interests of his wards, and he recommended that the account as filed be judicially settled and

allowed.  Thereafter and on January 30, 1911, a decree was made and entered judicially settling and adjusting the said account as filed and directing the distribution by the administratrix of the balance of the fund in the estate, namely, $7,444.49, and adjudging that upon making the payments specifically enumerated in the decree the administratrix be discharged from all liability as such.  This decree recited that there had been filed with the account and vouchers the agreement of December 17, 1910, made between the next of kin of the decedent who were of age whereby they agreed upon the division of the balance for which the administratrix might be found accountable, and also recited the appointment and report of the special guardian.  This apparently closed the history of the estate with a decree providing for a distribution exactly as the adult next of kin had agreed it should be made and with the concurrence of the special guardian of the minors.  Payments on account were to the next of kin, including Mrs. Blake.  But on June 24, 1911, Mrs. Blake verified a petition to the Surrogate's Court wherein she attacked the agreement of December 17, 1910, claiming that it had been obtained by misrepresentation and fraud upon her and the other persons interested, by the administratrix and by William H. Waters.  This petition was most general in its nature, consisted almost entirely of conclusions, and the facts upon which those conclusions were based were not set forth nor were the sources of the petitioner's information or belief as to the same stated, although it was obvious that they were matters which were not within the personal knowledge of the petitioner.  It is not necessary to set forth the statements of this petition at length nor to do more than to emphasize that they were most general in nature and conclusions rather than allegations of fact.  They had no probative value, and, standing alone, without explanation, corroboration or support, were insufficient to form a basis for any final action, nor would they have justified any further action by the surrogate than the granting of an order to show cause thereupon which he did grant on June 29, 1911, requiring the administratrix and all the next of kin to show cause before him on July 7, 1911, why the decree of January 30, 1911, settling the account of the administratrix should not be

vacated and set aside and the petitioner heard as to the matters stated in the petition, why the petitioner should not have the relief prayed for, and why such further relief should not be granted as justice might require. Pending the determination of the court the administratrix was enjoined from making any distribution pursuant to the terms of the decree.

In her petition Mrs. Blake made no attack whatever upon the good faith of the special guardian of the minors and made no suggestion that he had been imposed upon in any way or induced by fraud to make his report. The petitioner did not venture to allege that she had been induced to sign the waiver of issuance and service of a citation by fraud of any kind nor did she seek to make any attack thereon. Her attack was directed solely against the agreement which she claimed was obtained by fraud and she did not assert or even suggest that the decree of the surrogate settling the account pursuant to the agreement had been procured by any fraud or deceit practiced upon the surrogate nor that any error or mistake, clerical or otherwise, had been committed in its entry. Her very petition disclosed the fact that she had already begun an action in the Supreme Court, New York county, against the administratrix to set aside the agreement as fraudulent and of no effect and that the administratrix had appeared in said action. The next step in the estate was an order of the Surrogate's Court dated September 21, 1911, vacating the decree of January 30, 1911, and granting leave to the petitioner to file objections to the account on or before September 29, 1911. Objections were filed to the account, still most general in character, except the one which set forth that the administratrix had failed to present proper vouchers for expenditures amounting to $10,623.87 constituting the expenses of the household, and thereafter and on September 28, 1911, an order of reference was made to Honorable Rastus S. Ransom to examine the account and objections and hear and determine the questions involved. Thereafter, on the application of Elizabeth Ann Waters, individually and as administratrix, an order to show cause was granted on October 11, 1911, requiring the petitioner to show cause why the order of September 21, 1911, vacating the original decree should not be vacated and set aside and the petitioner's application be

restored to the calendar for hearing and the administratrix be given leave to file opposing affidavits to the petition. This application was fortified by the affidavits of Joseph T. Ryan, the attorney for the administratrix; William H. Waters, Elizabeth Ann Waters, Martin J. Waters, Raymond H. Waters, Patrick J. Powers, and by the answer to the petition to reopen the original decree. There were also submitted to the surrogate stipulations which had been entered into by the attorneys for all parties interested: *First*, adjourning the proceeding to set aside the decree to August 1, 1911; *second*, restoring the proceeding to the motion calendar for September 19, 1911; and *third*, adjourning the settlement of the proposed order to September 19, 1911. The affidavit of Mr. Ryan showed that the return day of the order to show cause why the decree should not be vacated was July 7, 1911, but that the motion did not appear on the calendar of the Surrogate's Court until July 11, 1911, at which time, as no one had been served with papers save the administratrix, the motion was adjourned by consent to July 25, 1911, on which day no proof was offered of service of the papers on the special guardian, nor had any one been designated to accept service for the minors, nor had any special guardian been appointed for them. Thereupon by stipulation dated July 24, 1911, the proceeding was adjourned to August 1, 1911. The attorney for the contestant agreed to attend to having the matter adjourned, it is claimed, but although some suggestion was made for the fixing of a day in August for the argument nothing definite was agreed upon, and on July thirty-first the attorney for the contestant wrote the attorney for the administratrix that if it was not possible for the latter to have his answering affidavits to the application ready by August first, he would consent that he, Mr. Ryan, might have one week more to file the same, by which arrangement, the attorney for the contestant said, he hoped to be afforded the privilege of seeing the affidavits and have a reasonable opportunity of replying to the same if he should deem it necessary. Before the time thus granted had expired the Surrogate's Court granted the motion to vacate the decree on August sixth. Thus the action by the court was taken before the time of the administratrix

fixed by agreement of the parties within which to file her answering affidavits had expired, and she was put in the position of having made no opposition and having suffered the application to go unopposed, although in fact she was preparing to oppose the same and, to the knowledge of the attorney for the contestant, was asking for further time within which to file her affidavits which he had granted.

It appears that the reason for this action of the surrogate was because the motion papers had been marked " submitted " on July 25, 1911, and he had no knowledge of any extension of time within which the administratrix, as agreed, might file her answering affidavits. Both parties were surprised at the rendition of the decision of the Surrogate's Court before the agreed time for the submission of the matter had expired, and it is claimed by the attorney for the administratrix that the attorney for the contestant agreed to go to the Surrogate's Court, explain the mistake and submit the answering affidavits, and that the former submitted to the latter substantial drafts of the affidavits proposed to be filed on August tenth. Thereafter nothing appears to have been done until August twenty-fifth, the attorney for the administratrix believing that the matter was held in abeyance until the affidavits could be submitted, but instead thereof notice of the settlement of the order was given, but on the protest of the attorney for the administratrix the order and notice of settlement were withdrawn by the attorney for the contestant on August twenty-fifth, but on September sixth the proposed order was again noticed for settlement and the attorney for the contestant refused to withdraw the same, but on September 12, 1911, the attorneys having met by agreement before the surrogate it was agreed in his presence that the matter be restored to the calendar and the settlement of the order be adjourned. Various transactions took place between the attorneys, not relevant to the main questions here, as the result of which it was agreed that the matter both of the petition to open the decree and the settlement of the order should be adjourned to September 19, 1911, but the attorney for the contestant finally refused to sign any stipulation unless it was without prejudice to the technical rights which he claimed to have gained by the action of the surrogate in deciding the motion

in his favor a day before the stipulated time to submit the matter had expired. The attorney for the administratrix filed an affidavit on the return day of the settlement of the order, asking that the apparent default of August seventh be reopened, but on September twenty-second the order opening the decree was signed, regardless of the facts which appeared showing that the decision of the court had been inadvertently made a day before the time to submit the affidavits had expired and that thus the administratrix had been foreclosed of her day in court. As a matter of fact the order setting aside the decree recites that the matter had been adjourned to August 8, 1911, for the submission of papers, and then proceeds to say that the same had been submitted, although it is established that such submission never took place as to the administratrix, and that in fact the decision of the motion was made a day before the time set for the submission of the papers.

The affidavits of the next of kin presented on behalf of the motion are most persuasive as to the absence of any fraud in the making of the agreement and if received by the Surrogate's Court would seemingly have made the vacating of the decree out of the question. In opposition to the motion were submitted the affidavits of Mr. Curtin, the attorney for the contestant, of Gertrude G. Blake and of Genevieve Waters, who, for the first time, appeared as joining with the original contestant. These affidavits add nothing of any probative force to the original petition of Mrs. Blake. The answering affidavits of Elizabeth Ann Waters, William H. Waters, Raymond H. Waters and Joseph T. Ryan simply strengthen the impression produced by the original affidavits of the baseless character of the mass of generalities indulged in by the contestant and her sister. Yet the surrogate denied the application, disregarding entirely the conceded fact that he had decided the motion before the time to file the answering affidavits to the original application had expired, and thus the administratrix, without being in default, was left by the recitals of the order in the position of having suffered a default and having submitted to the court without any opposing affidavits the application which she was in reality most strenuously opposing.

The reference then proceeded, and reached a point where the question arose as to the right of the referee to hear and determine the question of fraud in the execution of the agreement of December 17, 1910. The objections to the account as filed by Mrs. Blake contained no reference to the agreement, but the attorney for the contestant claimed that inasmuch as the surrogate had vacated the decree on a petition alleging fraud in the procuring of the agreement the issue of such fraud was conclusively decided and the matters in controversy must be determined regarding that issue as settled adversely to the administratrix. With this contention the referee did not agree, inasmuch as the order vacating the decree did not set forth the ground upon which the surrogate made it. The attorney for the contestant then sought to introduce testimony upon the issue of fraud in the making of the agreement, but when objection was made by the attorney for the administratrix the referee held that that issue was not properly before him and declined to take proof thereon unless the order was modified. He also indicated his doubt as to whether the Surrogate's Court had really passed upon the question of fraud in the making of the contract. Thereupon the contestant moved to resettle the order of September 21, 1911, by stating therein the ground upon which the order was granted, the motion being made returnable May 3, 1913, and on June 27, 1913, the Surrogate's Court made an order resettling the order of September 21, 1911, so as to recite that the decree of January 30, 1911, settling the accounts of the administratrix was vacated and set aside on the ground " that said decree was based upon a written stipulation or contract dated December 17, 1910, which stipulation or contract was obtained by fraud and misrepresentation on the part of the administratrix." While the proceeding was still pending the referee died, and on March 18, 1915, a new referee was appointed who rendered an opinion and a report dated September 23, 1915, settling and adjusting the accounts of the administratrix, but without any reference to the agreement of December 17, 1910. On August 29, 1916, the referee's report was overruled in part and the matter remitted to the referee for further action, pursuant to which he filed a further and amended report on November 16, 1916. Then on July 5, 1917, the final decree of the Surrogate's Court

was made, confirming the amended report of the referee and adjusting and settling the accounts of the administratrix and directing distribution, still without reference to the agreement hereinbefore set forth. By the final decree the administratrix was charged in addition to other matters with the sum of $11,317.56 representing the value on December 17, 1910 (more than four years after decedent's death), of two-thirds of the good will of the business formerly conducted by the decedent and his brother, William H. Waters, and after his death continued by William H. Waters in conjunction with the estate under the oral agreement of the adult heirs. This appeal attacks the propriety and legality of practically all the orders and decrees made after the original decree of January 30, 1911.

As all the subsequent orders and decrees are based upon the order of September 21, 1911, whereby the decree settling the accounts of the administratrix and directing the distribution of the estate was vacated and set aside, and as without such order and the consequent disregard of the agreement in question the final decree would have been impossible of rendition, it will be necessary first to determine whether said order was properly made.

At the time that the order in question was made section 2481, subdivision 6, of the Code of Civil Procedure conferred upon the Surrogate's Court power " to open, vacate, modify, or set aside, or to enter, as of a former time, a decree or order of his court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause. The powers, conferred by this subdivision, must be exercised only in a like case and in the same manner, as a court of record and of general jurisdiction exercises the same powers." (Laws of 1880, chap. 178.) But in the case at bar there was no suggestion of any fraud having been perpetrated upon the surrogate, nor of any fraud in the execution of the waivers of the service of citation, nor of any fraud in the conduct of the proceeding to settle the accounts. What fraud was attempted to be alleged had to do solely with the procurement of the agreement between the next of kin. There was no denial that the contestant had signed the agreement and waiver with full knowledge of their contents and meaning. The surrogate had

not been imposed on, nor had any deceit been practiced upon him, in which case he would of course have had power to act. The fraud claimed was limited to the inducing of Mrs. Blake to execute the agreement, and as that agreement was filed with the accounts of the administratrix, was referred to therein and formed a part thereof, and as the decree was based upon the agreement in so far as the distributive shares were fixed therein, if the proper proof of fraud had been made in bringing about the execution of the agreement the surrogate would have had power to vacate his prior decree, for the agreement then having been shown to be a fraudulent one, could not lawfully furnish a foundation for the adjustment of the rights of the parties in accordance therewith and in derogation of what the law would otherwise have declared their respective shares to be. For it must be noted that the various deductions and allowances provided for by the agreement made the shares of the next of kin quite different from what they would have been in the absence of such agreement. Where a paper forming the basis of a decree in whole or in part has been procured by fraud, such fraud, when established, would be a proper ground for vacating the decree. It is contended that if action is to be had under the section referred to, the application for relief by way of vacating a final decree settling the accounts of an administrator is a special proceeding (*Matter of Tilden,* 98 N. Y. 434) and must be commenced not merely by the presentation of a petition but by the issuance and service of a citation. (Code Civ. Proc. §§ 2516, 2517, as they existed Sept. 21, 1911; *Matter of Stein,* 33 Misc. Rep. 542.) But no such point was ever raised before the surrogate and the practice of initiating proceedings to vacate decrees by order to show cause or notice of motion has been recognized for many years. (*Cluff* v. *Tower,* 3 Dem. 253; *Matter of Smith,* 65 Misc. Rep. 417; *Matter of Wicke,* 74 App. Div. 221; *Matter of Doig,* 125 id. 746; *Deobold* v. *Oppermann,* 111 N. Y. 531.) The vital objection to any action by the surrogate under this section is, that there was before him absolutely no proof of any fraud in obtaining either the decree, the agreement or the waivers, which justified him in vacating the decree and the petition was too vague, indefinite and general in its terms, unsupported as it was by any corroborating

affidavits, to furnish him with any jurisdiction to so act. It is quite apparent as well that even if he had power under the section in question to vacate his own decree because of fraud, no power was conferred on him thereby to adjudge the agreement itself to be invalid. All that he could do would be to vacate his decree because of the established fraud and then withhold the entry of a new decree until the validity or invalidity of the agreement had been judicially determined by a proper trial. For if he undertook to enter a new decree, disregarding the terms of the agreement, he would be in effect summarily adjudging without a trial that the agreement was invalid, as was done in the present case. We conclude, therefore, that the section quoted does not furnish any authority for the order in question and that it cannot be sustained thereunder.

But the contestant claims that the order may be upheld as being within the general power of the courts to relieve from stipulations, to promote justice and prevent wrong, and cites various cases, none of which is applicable to the case at bar. This was no mere stipulation made in the course of an action or proceeding. As a matter of fact when it was made no proceeding was pending though it was undoubtedly entered into with a view to the proceeding about to be brought. But this was a formal agreement, under seal and acknowledged, and while a court may have all the powers claimed, no court has power to set aside and annul an instrument of such solemnity without a hearing or trial regularly conducted. It is one thing for a court to undo a wrong which it has unwittingly helped to perpetrate; it is quite another thing to determine property rights without a proper hearing.

Nor can the order in question be sustained under section 2472-a of the Code of Civil Procedure as it existed at the time the order was made. That section (as added by Laws of 1910, chap. 576, effective Sept. 1, 1910) provided: " The Surrogate's Court has also jurisdiction upon a judicial accounting or a proceeding for the payment of a legacy, to ascertain the title to any legacy or distributive share, to set off a debt against the same and for that purpose ascertain whether the debt exists, to affect the accounting party with a constructive trust, and to exercise all other power, legal or equitable,

necessary to the complete disposition of the matter. He must order the trial of any controverted question of fact of which either party has constitutional right of trial by jury and seasonably demands the same." The section of the Code of Civil Procedure now, and since 1914 (Laws of 1914, chap. 443), applicable to such a situation (§ 2510) confers much more comprehensive powers upon the surrogate. But section 2472-a as it existed in 1911 applied only to a proceeding for the payment of a legacy or to a judicial accounting. No proceeding for the payment of a legacy was instituted in this estate. The second provision is the only one which could at all be applicable. But the judicial accounting had terminated in the decree of January 30, 1911, and no accounting proceeding was pending when Mrs. Blake filed her petition in June, 1911. As a matter of fact all the papers and orders in question (after the original decree) are entitled, not in the judicial accounting, but " In the Matter of the Estate of Frank E. Waters, deceased," until the order of reference to William B. McNiece, dated March 18, 1915. Disregarding this technicality and treating the application to vacate the decree as having been made in the accounting proceeding, we are again confronted with the condition that the petitioner had neither set forth facts, nor offered proof warranting a finding that fraud had been committed. Mere generalities, technical terms and unsupported charges do not supplant legal proof, nor can a sealed instrument be set aside on vague conclusions, deduced from information obtained from unnamed sources. Not only was the petition insufficient in itself to warrant the order, but the administratrix was deprived of any opportunity to meet and answer the charges against her integrity. The decision of the surrogate was handed down before her time to file her answering affidavits had expired. Even if one of the attorneys had overlooked the filing of the stipulation extending the time for submission that was no reason why she should not have had her day in court. The affidavits setting forth the good faith of the agreement could only be submitted upon the motion to set aside the order as prematurely made, and to open her seeming default, and yet they apparently were not considered, any more than the undoubted fact that an error had been made in handing down

a decision before the time for submission had expired. The same desire to put the administratrix in the position of default or inability to contest which led to the inclusion in the order of the incorrect statement that the matter had been submitted, still persists, as is shown by the claim that we cannot deem any of the allegations of the petition controverted, as no answering affidavits were filed and her motion to open her default having been denied, we cannot consider them in arriving at a conclusion as to the merits. The agreement attacked by the contestant was a document evincing a purpose to finally adjust the rights of all the decedent's next of kin, and to effectuate that intent provisions were inserted which demonstrated a careful consideration of all elements bearing on the relative benefits which each of the children had received while dwelling in, or absent from, the home managed by their mother and maintained out of the receipts of the business. While the surrogate did not in terms annul and declare void the agreement itself, but simply vacated the decree because of fraud committed in procuring the agreement, he has in effect abrogated the agreement, for the final decree settles and determines the rights of the next of kin in absolute disregard of the various allowances, deductions and adjustments which the parties had agreed on as between themselves. Not the slightest attention was paid to the special guardian's report, approving the accounts and adopting the agreement, though not the slightest attack is made on his good faith. On the mere general statement of grievances by the contestant, unsupported by any concrete facts within her personal knowledge, the surrogate destroyed the whole effect of an agreement entered into in the most formal manner. The Supreme Court could not thus summarily dispose of property rights without statutory authority. (*Matter of Baltes*, 51 App. Div. 491; *Matter of Fox*, 166 id. 721; *Matter of Mendlow*, 179 id. 881.) There is no suggestion that the surrogate has any other or further power. The administratrix was entitled to a hearing and trial of the issues arising on the petition and her affidavits in answer thereto and the refusal to open her seeming default and allow her to come in and defend was also error.

Furthermore, the petition itself disclosed a reason why,

assuming that the surrogate had jurisdiction, he should not have exercised it. In her petition for the order vacating the decree Mrs. Blake set forth that " an action has been begun in the Supreme Court, New York county, against said administratrix by your petitioner, to set aside the said agreement as fraudulent and of no effect, and that said administratrix appeared herein by Joseph T. Ryan, Esq., of No. 149 Broadway, New York city." In fact the action was commenced April 4, 1911, and issue was joined April 22, 1911. The order to show cause why the decree should not be reopened was dated June 29, 1911. The Supreme Court having first acquired jurisdiction of the controversy as to the validity of the agreement, the action brought by Mrs. Blake should have been first disposed of and the question of the validity of the agreement there determined, and the trial of the questions affecting the decree upon the accounting of the administratrix in the Surrogate's Court (assuming that the petition gave it any jurisdiction) should have been stayed until the trial and decision of the action. (*Matter of Cary*, 77 Misc. Rep. 602; affd., 155 App. Div. 946; *Ludwig* v. *Bungart*, 48 id. 613.) The propriety of such a rule is demonstrated by the case at bar. Had the Supreme Court action proceeded to trial, one of two things would have happened: (1) The agreement would have been upheld, in which case nothing remained to be done by the Surrogate's Court save to deny the application, thus leaving the original decree in full force and effect; (2) the agreement would have been held invalid, in which case the Surrogate's Court could have proceeded at once to have the objections to the account heard and determined in regular course. The disregard of this salutary rule, despite the fact that the pendency of the action was frankly stated by Mrs. Blake in her petition to the Surrogate's Court, has left the parties in a position where, after years of delay and much expense, nothing that has been done can be allowed to stand, for the surrogate was without jurisdiction to make the first order complained of, and even if he had such jurisdiction he should not have exercised it.

These conclusions make unnecessary any consideration of the errors committed in fixing a value on the alleged good will

of the business conducted in behalf of the estate and himself by William H. Waters.

The orders and decree appealed from will be reversed, with costs to appellants payable out of the estate.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Decree and orders reversed, with costs to appellants separately payable out of the estate.