In the Matter of the Estate cf EDWARD FRANCIS CROWE, Deceased.

Surrogate's Court, New York County, February 24, 1931.

*Cleland R. Neal* [*Carroll G. Walter* and *Herbert R. Rising* of counsel, for the executor.

*Daniel F. Cohalan* [*R. E. Digney* of counsel], for the objectants.

FOLEY, S.   The issues in this contested accounting proceeding involve the validity of an agreement made in writing between the executor, two corporations in which the decedent held stock, and George Bernard, for the sale to Bernard of said shares of stock owned by the estate, and for the extinguishment and release of claims between the various parties.   Attack is also made upon the validity of an instrument simultaneously executed by all four residuary legatees under the will (the brothers of the decedent), wherein they consented to the making of the aforesaid agreement of sale, and they themselves directly released any claims against the two corporations and George Bernard.   These two agreements were made on March 13, 1926.   The residuary legatees in their objections charged the executor with negligence in the transaction, with making a sale below the true value of the stock, with the improper allowance or recognition of certain claims made by Bernard and one of the corporations against the decedent and his estate, and the suppression of the true facts from the residuary legatees.   They demand that their formal written consent to the transaction and the release executed by them be vacated and set aside.

The charges contained in the original objections were amplified by amendment, and the executor was further charged with having procured the consent of the legatees by false, fraudulent and deceitful representations, by coercion, intimidation and duress of the representatives of the executor and its attorney.   Voluminous testimony has been taken and numerous exhibits received in evidence. The attorneys for both sides, with commendable thoroughness, have in their briefs analyzed the long record and presented the law and authorities claimed by them to be applicable to the issues.

I find no support in the proofs of any of the charges of the objectants.   There is no evidence of any shade or degree of fraud, constructive or actual, on the part of the executor, its representatives or its attorney.   I hold further that the executor has not been shown to have been guilty of bad faith, negligence or other dereliction of duty, and I specifically find that each of the residuary legatees freely and voluntarily, and without coercion or duress, entered into their agreement whereby they consented to the transaction.

The stock which is the subject of the dispute consisted of fifty shares of Berncrow Realty Company, and one hundred and fifty shares of Corbeau & Cie, Inc.   Both corporations represented the business activities of the decedent and his associate, George Bernard. Each held one-half of the stock of the respective corporations.   The Corbeau Company was engaged in the business of designing and manufacturing women's dresses.   The decedent was its designer. His death necessarily affected the conduct of the business by reason

of the loss of his skill and experience. In many instances, the disposal of stock in a closely held corporation presents difficulty in the liquidation of an estate. The first available purchaser is usually the other party engaged in the enterprise. In practical effect the business here was a partnership. It was thus prudent and proper for the executor to open negotiations with George Bernard for the disposal of the shares of stock. (*Costello* v. *Costello*, 209 N. Y. 252.)

Edward F. Crowe, the decedent, died December 10, 1925. The executor qualified about January 11, 1926. Investigation of the conditions of the companies appears to have been made by the representatives of the executor soon after the issuance of letters. An appraisal corporation was retained to investigate the business and finances of the companies for the purpose of ascertaining the value of the stock. When completed, copies of this report were sent to each of the four residuary legatees. Each copy was transmitted with a letter from the attorney for the executor, which is dated February 25, 1926. The report contained an analysis of the accounts and balance sheets of the Corbeau Company for a period of years before the death of the decedent.

On February 27, 1926, Mr. Neal, the attorney for the executor, sent to each of the brothers a lengthy letter which sets forth the result of a prior meeting with Bernard and his attorney. Mr. Neal had been the legal adviser of Edward F. Crowe in his lifetime. Bernard's contentions with respect to certain claims which he asserted against the decedent were stated in this letter. These claims, among others, consisted of an alleged liability for over-drawals by the decedent, a claim to $75,000 of United States Liberty bonds, which were found in the safe deposit box of Edward F. Crowe, with an indorsement that the bonds were the property of the Corbeau Company, a claim for reimbursement of traveling expenses of the decedent alleged to have been improperly charged, and a claim by Bernard that he was the equitable owner of fifty shares of the estate stock of the Corbeau Company by virtue of a written agreement between himself and the decedent. Other contentions had been asserted by Bernard which it is unnecessary to mention here:

In the attorney's letter to the legatees there was also a statement of an offer by Bernard of $100,000 for the stock held by the estate and for the exchange of mutual releases by the parties. The suggestion was made in Mr. Neal's communication that the brothers agree upon a lawyer to represent them personally in the negotiations. It is significant that the latter suggestion was not accepted by them.

After the receipt of this letter the brothers came to New York city from their respective residences in Pennsylvania and Ohio,

and participated in various conferences, which led to the making of the written agreements attacked here. They were continuously in New York city in connection with this transaction from March sixth to March thirteenth, the day when the agreements were executed. The testimony shows that they were fully informed of the status of the negotiations with Bernard. They met him in conference, knew his contentions, and had equal opportunity with the executor, its representatives and its attorney to ascertain the condition of the companies' affairs and the relations of the decedent with Bernard and the companies. Bernard's offer was $100,000. A counter offer of $150,000 was made in behalf of the estate and the legatees. Later this offer was reduced to $125,000, and finally to the amount ultimately agreed upon — $112,500. Certain other adjustments were involved in the settlement. The oral compromise was made on March eleventh and the written agreements signed two days later.

It clearly appears from the evidence that all the brothers agreed to the acceptance of that figure. Nor is there any evidence of undue haste or pressure brought to bear upon these four legatees by the representatives of the executor or its attorney. Moreover, the record discloses no personal or financial interest by the executor's representatives or its attorney in the transaction or any pecuniary advantage reaped by any of them in the sale.

The appearance of the legatees on the stand was that of matured. keen-minded men, with an appreciation of business transactions, Two of them are architects by profession. The other two are contractors. All of them were over forty years of age at the time of the negotiations. One of them particularly showed by the manner of his testimony that he was unusually resolute and determined, and of a character and disposition not susceptible to restraint or influence.

I had a similar situation before me in *Matter of Tyrrell*, where an attempt was made to set aside a settlement by men of similar ability and experience who sought to avoid their acceptance of a compromise from the estate (*Matter of Tyrrell*, 115 Misc. 714; affd., 198 App. Div. 1001). The acumen of a party to a compromise agreement is an important consideration where fraud or coercion is charged by him in the execution of the agreement.

The courts have strongly favored the making of compositions in estates and after the settlement is made, if bad faith or fraud be absent, give vigorous support to its validity. (*Fisher* v. *Fisher*, 253 N. Y. 260; *Matter of Cook*, 244 id. 63, 69; *Minehan* v. *Hill*, 144 App. Div. 854; *Matter of Pruyn*, 141 N. Y. 544; *Matter of Wagner*, 119 id. 28, 37; *Matter of Waters*, 183 App. Div. 840; *Matter of Tyrrell*,

115 Misc. 714; affd., 198 App. Div. 1001; *Slater* v. *Slater*, 208 id. 567; affd., 240 N. Y. 557.) By such means controversies are settled, conveyances by the fiduciary expressly approved by the beneficiaries, and, in the great majority of cases, the burdensome expense of litigation is saved to the persons interested. In *Minehan* v. *Hill* (*supra*, 144 App. Div. 854, at p. 858) this policy is stated as follows: " Courts from the earliest times have favored compromises of *bona fide* disputes and have held agreements therefor to be founded upon good consideration irrespective of the vality of the claim which was compromised. (*Goilmere* v. *Battison*, 1 Vern. 48; *Cann* v. *Cann*, 1 Williams, 723; *Penn* v. *Lord Baltimore*, 1 Ves. Sr. 444; *Russell* v. *Cook*, 3 Hill, 504; *Hogue* v. *Hogue*, 1 Watts, 163, 216; *Leach* v. *Fobes*, 11 Gray, 568; *Sears* v. *Grand Lodge A. O. U. W.*, 163 N. Y. 374.) Judges have stated the rule in various language, all, however, to the same tenor. In *Russell* v. *Cook* (*supra*) COWEN, J., says: ' In such cases it matters not on which side the right ultimately turns out to be. The court will not look behind the compromise.' In speaking of a contract of compromise under a will contest, BIGELOW, J., in *Leach* v. *Fobes* (*supra*) says: ' As they [such contracts] contribute to the peace and harmony of families and to the prevention of litigation, they will be supported in equity without an inquiry into the adequacy of the consideration on which they are founded.' GIBSON, Ch. J., in *Hogue* v. *Hogue* (*supra*), says: ' The compromise of a doubtful title when procured without such deceit as would vitiate any other contract, concludes the parties, though ignorant of the extent of their rights; ' and BARTLETT, J., in *Sears* v. *Grand Lodge A. O. U. W.* (*supra*), says: ' Compromises of disputed claims fairly entered into are final, and will be sustained by the courts without regard to the validity of the claims.' "

Careful and prudent fiduciaries and their attorneys, in many estates, bring in the parties who are ultimately affected by such sales or settlements, for the purpose of acquainting them with the details of the negotiations and to obtain consents to the sale or compromise before or at the time the matters are consummated. By that procedure both the representative and the beneficiary are protected and contests on the final accounting are usually avoided.

These four brothers, as residuary legatees, were the equitable owners of the assets of the estate, subject to the claims of creditors and the payment of administration expenses. They were directly concerned in securing an adequate price for the stock and in saving litigation with Bernard, with the attendant expense. The estate was confronted with the alternative of an enforced liquidation of the corporations with the almost certain consequence of a loss

in the proceeds ultimately realized. (*Matter of Demmerle*, 130 Misc. 684; *Costello* v. *Costello*, 209 N. Y. 252.) Moreover, the prospect of selling the stock to a third party was impaired by the fact that the estate and Bernard owned an equal number of shares of the stock in the companies affected. Such a sale would have lacked the attraction of bringing control of the business to the purchaser.

A somewhat similar situation to that here involved was dealt with in *Geyer* v. *Snyder* (140 N. Y. 394), where the legatees consented to and approved of a sale by a written instrument which formed part of the executor's agreement for the sale of the decedent's interest in a partnership. There was an additional element there, which is lacking in the present case, for the purchasers were the surviving partners of the decedent and two of them were executors of the estate. In that case the validity of the agreement of the legatees was sustained by the Court of Appeals because of the absence of fraud and misrepresentation.

The procedure, therefore, of the executor's representatives here in arranging with the residuary legatees to obtain their written consents to the sale and settlement was beneficial, proper and commendable. Unfortunately subsequent litigation was not avoided and this case is one of the isolated exceptions where the formal consent of the beneficiaries is sought to be evaded. It further appears that no explicit notice of disaffirmance of the agreements was given by the brothers until the filing of the objections in this proceeding. A period of over three years elapsed between the settlement and filing of the objections here. In the meanwhile their conduct indicated acquiescence by their acceptance of the benefits of the settlement. Partial distribution of the estate was begun a few days after the compromise had been signed. The first installment paid to each of the four of them was $5,000, and further payments were made from time to time up to the date of the commencement of the accounting proceeding. They also received long prior to the commencement of this proceeding a distribution, in kind, of certain stock of the General Electric Company, which was involved in the controversy with Bernard. It clearly appears from the entire testimony and even from that of the legatees themselves, that they accepted the settlement voluntarily. All of them apparently believed that they had received the best price obtainable from Bernard.

A contemporaneous mental reservation, or a subsequent change of mind as to the adequacy of the bargain which they had made, is wholly insufficient in law or equity to destroy the instrument formally entered into by them. The objections and amended objections dealing with these charges are, therefore, dismissed upon

the merits, and the agreements made by the four residuary legatees held valid.

The surrogate holds that there is no liability on the part of the executor arising out of the sale and settlement.

The remaining issue as to the attorneys' fees will be heard by me on the 20th day of March, 1931, at three P. M.

Proceed accordingly.