In the Matter of the Estate of ANNA CHRISTINE NORMAN BOOTH, Deceased.*

Surrogate's Court, New York County, November 1, 1932.

*Seacord, Ritchie & Young,* for J. Marshall Perley, executor of the estate of John H. Hayden, deceased, legatee and assignee.

*King, Barr & Robbins,* for Baylis & Co., respondent.

*Hays, St. John, Abramson & Schulman* [*T. Raymond St. John, Arthur Garfield Hays* and *Henry G. Van Veen* of counsel], for the petitioners.

*Franklin H. Mills,* for Minnie M. Jamison, claimant.

*Jacob Bobana,* for Enos S. Booth.

*Vincent A. O'Connor,* for the executors of the estate of Alfred H. Strickland.

FOLEY, S.    The executors in this accounting proceeding attack the validity of a written guaranty signed by the decedent to secure the payment to her mother, Mrs. Minnie M. Jamison, the claimant herein, of the sum of $1,000 annually, directed to be paid as alimony during the lifetime of the claimant under a decree dated July 27, 1906, of the Court of Common Pleas of Hamilton county, State of Ohio, dissolving the marriage between the claimant and her husband, Andrew G. Norman, the decedent's father.

On June 1, 1906, prior to the entry of this decree, the claimant and her former husband, Andrew G. Norman, entered into an agreement for the payment of $1,000 a year alimony to the claimant, on

---

* See, also, 138 Misc. 381.

condition that no defense be filed by Mr. Norman to her petition for divorce and that the divorce be granted upon the ground of gross neglect of duty. By the decree of divorce the court found that the agreement between the parties theretofore made was a valid and subsisting contract, and confirmed it. Thereafter, for over twenty years and until he died in 1927, Mr. Norman paid to the claimant the sum of $1,000 per annum. After Mr. Norman's death there was presented by Mrs. Jamison to the administrator c. t. a. of the estate of Andrew G. Norman, and allowed, a claim for the payments of $1,000 annually. Under the will of her father, the decedent became the sole legatee and devisee of his estate.

On April 10, 1928, an agreement was entered into between the decedent and the claimant whereby " in consideration of the said Minnie M. Jamison withdrawing her claim against said estate " for the purpose of enabling the administrator c. t. a. to file a final account in the estate of Andrew G. Norman, the decedent appointed an agent to collect and transfer to Mrs. Jamison the rents and dividends of certain real and personal property previously set aside pursuant to the decree of divorce to secure the annual payments by Andrew G. Norman during her lifetime. On May 18, 1928, the decedent personally guaranteed such payments in writing as follows:

" I hereby personally guarantee all the payments provided for in the above agreement, and the payment of said alimony as provided for in the Decree in the cause of Minnie M. Norman vs. Andrew G. Norman, Case No. 134,445, Hamilton County, Ohio Common Pleas Court.
" *May* 18, 1928        ANNA CHRISTINE NORMAN BOOTH."

It was stipulated between the parties in this proceeding that the claimant withdrew her claim against the estate of Andrew G. Norman upon the execution by the decedent of the aforesaid guaranty.

The executors contend that the guaranty has no legal validity because (1) the contract of June 1, 1906, reciting the intention of the decedent's parents that Mrs. Jamison sue for divorce was illegal and immoral and against public policy; (2) the judgment of divorce entered thereon in the State of Ohio was, therefore, defective and of no force and effect in the State of New York; and (3) the contract and the judgment being void, the guaranty also falls. With these contentions of the executors, I cannot agree.

The question here is, was there a valid consideration for the execution by the decedent of the agreement of guaranty. The claim of Mrs. Jamison against the estate of Mr. Norman was with-

drawn upon the express condition that the decedent transfer to Mrs. Jamison the rents collected by her agent from the property set aside to secure the claim, and upon the execution by the decedent of her personal guaranty. This, in effect, was a valid compromise of her claim. The direct consideration passing from Mrs. Jamison to the decedent for the agreement was the giving up of her claim against her former husband's estate. As was said in *Minehan* v. *Hill* (144 App. Div. 854, at p. 858): " Such claim being a *bona fide* one, so far as consideration for the compromise is concerned, it does not matter whether the claim was much or little, or for that matter good or bad. It is not necessary, in order to uphold a compromise agreement based upon a surrender or composition or compromise of a claim, that the claim should be a valid one, or one that can be enforced at law, provided it be made in good faith. A promise made upon a settlement of disputes and to prevent litigation is made upon a good consideration, and the settlement of a doubtful claim will uphold a promise to pay a stipulated sum or do any other lawful act. (*White* v. *Hoyt*, 73 N. Y. 505, 514.) Courts from the earliest times have favored compromises of *bona fide* disputes and have held agreements therefor to be founded upon good consideration irrespective of the validity of the claim which was compromised. (*Goilmere* v. *Battison*, 1 Vern. 48; *Cann* v. *Cann*, 1 Williams, 723; *Penn* v. *Lord Baltimore*, 1 Ves. Sr. 444; *Russell* v. *Cook*, 3 Hill, 504; *Hogue* v. *Hogue*, 1 Watts, 163, 216; *Leach* v. *Fobes*, 11 Gray, 568; *Sears* v. *Grand Lodge A. O. U. W.*, 163 N. Y. 374.) Judges have stated the rule in various language, all, however, to the same tenor. In *Russell* v. *Cook* (*supra*) COWEN, J., says: ' In such cases it matters not on which side the right ultimately turns out to be. The court will not look behind the compromise.' "

There can be no question of good faith here. The payments of alimony were regularly made by Mr. Norman to his former wife until the date of his death. Thereafter the administrator c. t. a. of his estate approved the claim. The decedent herself recognized the validity of the claim. It is only after both the person originally liable in the first instance, and the decedent, his sole legatee and devisee, have died that the executors raise the question of its legality for the first time. It is immaterial whether the original agreement between the decedent's parents or the decree of divorce was legal or illegal. The court need not look behind the compromise. The validity of settlements in estates, in the absence of bad faith or fraud, are given vigorous support by the courts. (*Fisher* v. *Fisher*, 253 N. Y. 260; *Matter of Cook*, 244 id. 63, 69; *Matter of Pruyn*, 141 id. 544; *Matter of Wagner*, 119 id. 28, 37; *Matter of Waters*, 183

App. Div. 840; *Matter of Tyrrell*, 115 Misc. 714; affd., 198 App. Div. 1001; *Slater* v. *Slater*, 208 id. 567; affd., 240 N. Y. 557; *Matter of Crowe*, 139 Misc. 648, 651.) The claim of Mrs. Jamison is, therefore, allowed. Appropriate provisions should be made in the decree settling the account, perpetuating the liens on the property located in Cincinnati, Ohio, for the benefit of the claimant and securing future payments of the amounts due her thereunder.

Submit decree on notice accordingly.