CECELIA L. SLATER, Respondent, *v.* JOHN SLATER, Appellant, Impleaded with TITLE GUARANTEE AND TRUST COMPANY, as Substituted Trustee, etc., of JOHN SLATER, Deceased, and Another, Defendants.

First Department, April 4, 1924.

Contracts — action to set aside sale of corporate stock of corporation organized to take over partnership business of testator and another — partnership assets were directed to be sold in action for accounting by plaintiff and others as executors of deceased partner — agreement was entered into by all parties interested providing for corporation to take over assets and sale of one-half of estate's share to appellant — complaint alleges inadequate consideration but does not allege fraud or conspiracy — agreement made and executed nineteen years before action commenced — appellant cannot be restored to original position — sale was not in violation of trust established by deceased partner's will — no inference of unfair dealing by appellant — rescission cannot be made as to part.

The complaint in an action to set aside the sale of 250 shares of stock, on the ground that the sale was upon an inadequate consideration and was violative of certain testamentary trusts, does not state facts sufficient to constitute a cause of action where it is alleged that the plaintiff's husband, at the time of his death, was a partner in a certain business; that the plaintiff, who was then one of the executors of the will of her husband, together with the other executors, brought an action against the surviving partner for an accounting in respect to the partnership property which action resulted in a direction that the assets be sold; that after the decision in the accounting action an agreement was entered into between all the parties interested in the estate, the surviving partner and the appellant, who had prior to that time acted as manager of the partnership business, under the terms of which it was agreed that a corporation should be organized to take over all the partnership assets and issue in payment therefor corporate stock to the estate and to the surviving partner, and as a part of that agreement it was provided that one-half of the stock going to the estate should be sold to the appellant at par and that the surviving partner would sell one share more than one-half of his holding to the appellant; that said agreement was executed, all the parties being represented by counsel, and for about nineteen years the appellant managed the business which was run at a profit and dividends were paid to the estate on its share of the capital stock; and it appears that no allegation of fraud or overreaching or conspiracy is contained in the complaint.

While the plaintiff alleges that she is willing to, and has offered, on return by the appellant of the stock received by him, to pay him the price he paid therefor, she cannot under the circumstances attending the case, restore him to the position which he occupied at the time of entering into the agreement.

The sale of the stock of the corporation organized to buy the partnership assets did not violate the trust created in the deceased partner's will, since upon his death the partnership was automatically dissolved and the partnership assets as such never came into the possession of the executor or trustee of the estate.

The rule that a trustee, an attorney, or any other person acting as a fiduciary or

in a confidential relation cannot be permitted to retain profits obtained through the undue use of such relation, has no application to the facts of this case.

Furthermore, the plaintiff is seeking to rescind in part the agreement entered into by all the parties which is not permissible under the law; rescission must be *in toto* or not at all.

APPEAL by the defendant, John Slater, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 5th day of June, 1923, denying his motion to dismiss the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

*Rounds, Hatch, Dillingham & Debevoise* [*Auguste M. Thiery* of counsel; *Eugene Congleton* with him on the brief], for the appellant.

*Glenn M. Congdon* [*John L. Lindsay* with him on the brief], for the respondent.

MERRELL, J.:

The action is brought by Cecelia L. Slater, the widow and principal life beneficiary under the last will and testament of John Slater, deceased. The plaintiff seeks to set aside as null and void a sale of 250 shares of stock in J. & J. Slater, a corporation, made in February, 1904, to the defendant John Slater. It is claimed by the respondent that such sale was upon an inadequate consideration and was violative of certain trusts set forth under the last will and testament of John Slater, deceased. The defendant John Slater is a son of Thomas Slater, a deceased brother of the testator. The aforesaid sale was made pursuant to an agreement bearing date on January 6, 1904, which agreement was intended to adjust and settle certain controversies between the estate of John Slater, deceased, and James Slater, who was the surviving partner of the firm of J. & J. Slater, a copartnership, and also certain differences which had arisen among the various parties interested. The copartnership of J. & J. Slater was formed in 1859 for the purpose of engaging in the shoe business in the city of New York. Since that time the firm transacted business in New York city and had large assets which included the firm name. The firm was composed of the decedent, John Slater, and his brother, James. After the death of John Slater the business was carried on for a short time and was apparently under the direct management of the defendant John Slater, who had been the manager of the copartnership's business for some time. Prior to the making of the aforesaid agreement an action had been brought by the present plaintiff, Cecelia L. Slater, and John J. Slater, a son of said decedent, the

then acting executors of the last will and testament of John Slater, deceased, against James Slater, the surviving partner, individually and as executor of John Slater, deceased, for an accounting in respect to the partnership property. This action is recited in the agreement of January 6, 1904, a copy of which is annexed to the complaint. The accounting action having been tried, appeals were taken from the judgment, first to this court and then to the Court of Appeals. (*Slater* v. *Slater*, 78 App. Div. 449; 175 N. Y. 143.) The Court of Appeals directed a sale of all copartnership assets, including the firm name, such sale to be made under the direction of a referee. After the decision of the Court of Appeals the parties, with the evident intention of arriving at an amicable adjustment of all of their disputes and contentions, entered into the aforesaid agreement. This agreement provided that the sale of such copartnership assets, including the firm name, should be made to a new corporation to be formed, which corporation should be called J. & J. Slater, having a capital stock of $100,000 divided into 1,000 shares of the par value of $100 each, all being common stock. The agreement provided that upon the organization of such corporation all of the assets of the old copartnership should be turned over to it, consideration therefor being the entire stock of said corporation. The entire stock of the corporation was in the first instance to be divided equally between James Slater, decedent's brother, who was the surviving member of the copartnership, and the estate of John Slater, deceased; upon such division the order directing the sale was to be closed, satisfied and disposed of by " appropriate means and steps." It then provided that the estate of John Slater should deliver to the defendant John Slater, the then manager of said business, a contract to sell to him on demand 250 shares of the stock of said corporation for $25,000 in cash, and that the aforesaid James Slater should enter into a similar contract to sell to John Slater 251 shares of his stock. Under such arrangement, after the expiration of three years from the date of the agreement John Slater would hold 501 shares of the stock of the new corporation. John Slater, who was a party to such agreement, agreed on his part to accept the aforesaid contracts for the purchase of stock by him and agreed to enter into a contract with the new corporation to continue in his position and service as manager for a term of ten years, his compensation to be for the first three years of such term an amount equal to ten per cent of the ascertained net profits of the business, and for the remaining seven years an amount equal to five per cent of the ascertained net profits. The agreement further provided that James Slater, John Slater and one Louis Lee Stanton should be the directors of the new corporation for the first

year, and that in order to protect the interest of the minority stockholders, a provision should be made in the articles of incorporation of the new company for the election of directors under a cumulative system of voting. The agreement then contained provisions respecting the adjustment of all controversies, including an agreement on the part of Cecelia L. Slater to resign both as executrix and trustee for the purpose of having the Standard Trust Company of New York appointed the administrator with the will annexed, and also sole trustee under the will. Similar provision was made in respect to the resignation of John J. Slater, the son of the testator, and of the aforesaid James Slater. The instrument was executed by all of the interested parties, including Cecelia L. Slater, the daughter of the testator.

It is alleged in the complaint that the defendant Title Guarantee and Trust Company is now the substituted trustee under decedent's will; that J. & J. Slater has been since 1904 a domestic corporation; that in or about the month of " February, 1904, the entire business of the said J. & J. Slater, together with all of its property rights and obligations were sold and turned over to defendant J. & J. Slater, corporation; " that 500 shares of the capital stock of such corporation at the time of its organization were issued to the estate of John Slater, deceased, and " thereupon became a part of said trust created by the said John Slater, deceased, as aforesaid, for the benefit of plaintiff; " that since August 1, 1907, the defendant Title Guarantee and Trust Company, as trustee of said estate, has owned and held 250 of said shares of stock so issued to said estate; " that this plaintiff at the time of the transfer of said 250 shares of stock to said John Slater, as hereinafter set forth, was advanced in years, in poor health and was not familiar with business matters, and was not familiar with her rights under said last will of John Slater, deceased, and in the trust therein created; " that the transfer of one-half of said stock originally issued to the estate of John Slater, deceased, to the defendant John Slater was " for a grossly inadequate consideration, and was contrary to the intention of said testator as expressed in said will and was in contravention of the trust created by said will, and was null and void; " that " the sale of said 250 shares of the stock of J. & J. Slater as hereinbefore set forth resulted in a partial nullification of said trust contained in the will of said John Slater, deceased, contravened the same, and as a result thereof said estate and the trust created as hereinbefore set forth, was thereby caused to lose large income and profits earned in the business of said J. & J. Slater which would otherwise have been earned and would have enured to the benefit of this plaintiff as the sole beneficiary under said will, but which

were by reason of the premises wholly lost to her; " that said John Slater, as a result of such transfer, received dividends from time to time exceeding $100,000 which dividends were at all times the property of the defendant Title Guarantee and Trust Company, as such substituted trustee; that the plaintiff has made due demand on the said defendant John Slater for the return of the aforesaid stock and has also demanded of the defendant Title Guarantee and Trust Company that it commence and prosecute an action to recover the same, all of which demands have been refused. The plaintiff asks for judgment declaring the aforesaid transfer of said stock null and void so far as said John Slater is concerned; that said defendant John Slater be ordered and directed to transfer to the defendant Title Guarantee and Trust Company the aforesaid stock, and be required to account for and pay over to such trustee all dividends paid to him.

While the complaint alleges that the plaintiff, offered, on return by the said defendant John Slater, of the stock so received by him, to repay him the sum of $25,000 paid therefor, it is quite apparent that the defendant Slater could never be restored to the position which he occupied at the time of entering into the agreement of 1904. The complaint contains no allegations of fraud, and the defendant Slater has acted as manager of the corporation for the best period of his life. The large dividends alleged to have been declared by the corporation were earned while he was manager. The estate must. have received similar dividends and likewise dividends must have been paid to the other stockholders. While the complaint alleges that the plaintiff nineteen years ago was in poor health and not familiar with business matters, it is quite evident that such allegations could not apply to the other executors, one of whom was the plaintiff's son. There is no allegation of conspiracy nor that the plaintiff was overreached. The statement that the consideration paid for the stock was inadequate is a mere conclusion. The complaint contains no allegation that any arrangement was made between the estate and the surviving partner whereby any one representing the estate should continue ' he business with the surviving partner as a partner. The action which was brought by the plaintiff and finally decided by the Court of Appeals was for an accounting. The court will take judicial notice of its own decisions. The action was against the surviving partner and was to compel the liquidation of partnership assets. The court decreed a sale and the complaint alleges in paragraph 10 that the entire business of the copartnership was sold to the new corporation. It, therefore, follows that the parties to the agreement of January 6, 1904, were represented by counsel; that they were

contending in respect to their rights in the distribution of the partnership assets; and that neither the defendant Slater nor the surviving partner occupied any relation of confidence or of trust which would give to either party any control over the plaintiff. While it is alleged in the complaint that the stock in question formed a part of the trust and that the aforesaid sale was in contravention of the trust created in decedent's will, such is not the fact. Upon decedent's death in June, 1901, the partnership was automatically dissolved. (Partnership Law of 1919, § 62; *Stem* v. *Warren,* 227 N. Y. 538.) Upon such dissolution the surviving partner had a right to settle the partnership affairs, and the partnership assets as such never reached the hands of any executor or trustee of the decedent's estate. A copy of decedent's will is annexed to the complaint and paragraph 5 thereof reads as follows:

"*Fifth.* It is my will and desire but I do not so direct that the business now carried on by my brother James and myself as copartners be continued for the benefit of my Estate so long as it may be practicable and profitable so to do."

The aforesaid paragraph is the only reference in the will to the testator's business, and even had the testator directed his personal representatives to continue the partnership business, they could neither have been compelled to do so by the surviving partner nor could such personal representatives have compelled the surviving partner to admit them as partners.

Even if it might be inferred from the allegations of the complaint that the defendant Slater occupied the position of agent, such inference would not be sufficient to raise any presumption of unfair dealing. (*Cowee* v. *Cornell,* 75 N. Y. 91; *Doheny* v. *Lacy,* 168 id. 213; *Nesbit* v. *Lockman,* 34 id. 167; *Matter of Smith,* 95 id. 516; *Kelly* v. *Ashforth,* 47 Misc. Rep. 498; affd., 111 App. Div. 922; *Ten Eyck* v. *Whitbeck,* 156 N. Y. 341; *Hunter* v. *McCammon,* 119 App. Div. 326.) The court held in the above cases that there is no presumption of undue influence from the mere relationship of the parties.

While it is true that a trustee, an attorney or any other person acting as a fiduciary or in a confidential relationship cannot be permitted to retain profits obtained through the undue use of such relationship, such rule does not apply to the facts in the case at bar. Moreover, the agreement of January 6, 1904, was not an agreement whereby the plaintiff individually sold shares of stock to the defendant Slater, but was an agreement entered into between all of the parties for the purpose of settling their disputes and differences. The surviving partner under this agreement sold to Slater one more share of stock than was transferred to him by the

estate. Certainly the surviving partner must have known what he was doing as did all of the executors and the children of the plaintiff. Such being the case, no inference of fraud, conspiracy or undue conduct on the part of the defendant Slater can be indulged. Moreover, the defendant Slater can never be restored to his original position. It is well settled that a suit to annul or rescind a contract will not lie where the parties cannot be restored to their original position. (*Curtiss* v. *Howell*, 39 N. Y. 211; *Bedell* v. *Bedell*, 3 Hun, 580; *Pullman* v. *Alley*, 53 N. Y. 637; 9 Cyc. 437.) The rule is stated in the last above citation as follows: " The contract can only be rescinded where it is possible to put the parties back in their original position and with their original rights. 'A contract voidable for fraud cannot be avoided when the other party cannot be restored to his *status quo:* For a contract cannot be rescinded in part and stand good for the residue. If it cannot be rescinded *in toto*, it cannot be rescinded at all; but the party complaining of the non-performance, or the fraud, must resort to an action for damages.' "

If, as the respondent contends, the sale made pursuant to the agreement of January 6, 1904, was null and void, the agreement itself must be null and void. The respondent would not be entitled to the benefits under such agreement if such is the case. In order to give the respondent the relief asked it would, therefore, be necessary to rescind the agreement *in toto* and to hold that the same was absolutely null and void. The respondent does not allege in her complaint any offer to restore the other parties to the agreement to their original status. She cannot, therefore, be permitted to rescind in part. (*Hayward* v. *Wemple, No. 1*, 152 App. Div. 195; affd., 206 N. Y. 692; *Chipman* v. *Montgomery*, 63 id. 221; *Francis* v. *N. Y. & B. El. R. R. Co.*, 108 id. 93; *McNaught* v. *Equitable Life Assurance Society*, 136 App. Div. 774.)

As the complaint and the exhibits annexed thereto state clearly the entire transactions between the parties, the plaintiff should not be permitted to amend. The order appealed from should be reversed, with ten dollars costs and disbursements, and defendant's motion to dismiss the complaint be granted, with ten dollars costs to the appellant.

DOWLING, SMITH, FINCH and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.