In the Matter of the Estate of Tom Rees, Deceased.

Surrogate's Court, New York County, July 13, 1940.

*M. Rudolph Preuss,* for the petitioner.

*Stumpf & Stumpf,* for the respondent.

Foley, S. The application to compel the executor to file his account is denied. The defense of the executor that the right of the petitioner, Anna Davies, to participate in any further distribu-

tion of the estate was terminated by her written agreement made on February 29, 1940, and the release and the receipt executed on April 1, 1940, simultaneously with the payment to her of $30,000 in full satisfaction of her share of the estate, is sustained. The release alone constitutes an effective bar to her right to compel an accounting. (*Matter of Stone*, 272 N. Y. 121; *Matter of Schoenewerg*, 277 id. 424, affg. 160 Misc. 819; *Matter of James*, 173 id. 1042.)

The petitioner, however, has asserted that the agreement and release and the payment to her of the outright amount were induced by misrepresentations made by the executor and the attorneys as to the financial condition of the estate as to alleged threats to foreclose certain real property by the mortgagee and as to other matters affecting the estate. These charges involve alleged fraudulent inducements practiced upon the petitioner and imposition upon her as an ignorant person entirely unfamiliar with the affairs of the decedent.

The surrogate finds that there is not the slightest credible evidence in the record of any basis of fraud or misrepresentation in the procurement of the documents which the petitioner signed. The surrogate rejects the testimony of the petitioner as false and unworthy of belief. The surrogate accepts as true the testimony of the two attorneys and the executor that the petitioner was fully informed as to every step in the administration of the estate and that she was intimately acquainted with the affairs of the decedent, the nature and the value of the property left by him, the gross and net income of the real properties and the character and purpose of each of the instruments which she signed in the final settlement of her share of the estate. Far from being a woman of ignorance in business affairs, her appearance on the stand and her communications in writing establish her keenness, business sense and adroitness.

The shrinkage in the value of the assets of the estate from the time of the death of the decedent was due to market and economic conditions. The petitioner herself participated in and authorized the ultimate liquidation of the securities left by the testator. The negotiations between the parties which led first to the agreement of February 29, 1940, and ultimately to the release and distribution to the petitioner were honestly and fairly conducted as between the parties and their attorneys. In these negotiations it is apparent that the petitioner desired to obtain her share of the estate in cash. The only remaining assets were the parcels of real estate which were of speculative and contingent value because of the improbability of a sale by which the equities might be converted into money. There was no disparity between the amount

of cash paid to the petitioner and the value of the equities in the real estate. The executor, in his capacity as a beneficiary of the estate, elected to take the real estate with the probability of delay, in a sale, for many years. The petitioner, in her capacity as a beneficiary, demanded an immediate cash distribution in discharge of her interest in the estate. The parties dealt at arm's length and with full knowledge of the facts. The agreement and final settlement were, therefore, untainted by any degree of fraud or misrepresentation.

The making of such agreements for the final adjustments of estates has repeatedly received the approval of the courts. When fairly made they are enforcible and are sustained. (*Fisher* v. *Fisher*, 253 N. Y. 260; *Matter of Cook*, 244 id. 63; *Slater* v. *Slater*, 240 id. 557, affg. 208 App. Div. 567; *Matter of Pruyn*, 141 N. Y. 544; *Geyer* v. *Snyder*, 140 id. 394; *Matter of Wagner*, 119 id. 28; *Matter of Gould*, 172 Misc. 396; *Matter of Crowe*, 139 id. 648.)

Tax costs and submit order on notice denying the application accordingly.