In the Matter of the Estate of LIONEL J. SALOMON, Deceased.

Surrogate's Court, Kings County, November 2, 1940.

*Mitchell, Taylor, Capron & Marsh,* for the City Bank Farmers Trust Company, trustee, petitioner.

*Edward Nathan,* for George S. Gans and Lawrence E. Hart, cotrustees.

*Max Halperin [Irving Davis* and *Merrill Charlton* of counsel], for Robert K. Hart, individually and as executor, etc., of Hart Hirshfeld, deceased life beneficiary, and as life beneficiary, objectant.

*Engelhard, Pitcher & Amann,* for the New York Foundation, remainderman, objectant.

Dodd, J., Acting Surrogate. The facts in this proceeding, whereas submitted on affidavits instead of upon a stipulation, are undisputed in any material aspect. Under the terms of the trust, the trustee was restricted to investment in government securities and " bonds secured by first mortgage on real estate within the City of New York and guaranteed by a Title Company." In fact, on June 21, 1932, it invested in a bond and mortgage on property located at 271 Cedarhurst avenue, Cedarhurst, Long Island, which is not within the city. This investment has proved unfortunate. The sole issue presented is whether the life beneficiaries and remainderman of the trust possess a basis of surcharge against the trustee by reason of this initial investment in violation of the authority of the will.

In the late spring and early summer of 1939 the attorneys for the trustee prepared a full accounting of its transactions to and including the 26th of October, 1936, in a form which would have been acceptable upon a judicial settlement of its accounts. This account, in Schedule B, recited the receipt of a " 40 /79 interest in premises 271 Cedarhurst Avenue, Cedarhurst, Long Island upon the foreclosure of $4000 mortgage Louis Wulkan covering property," the acquisition of which, in 1932, was disclosed in Schedule B-1. In its Schedule C-1 it detailed disbursements in respect of " Premises 271 Cedarhurst Avenue, Cedarhurst, Long Island," including tax payments to the " Treasurer of Nassau County " and the " Treasurer of Cedarhurst," and in the recapitulation of that schedule and again in Schedule H, expressly referred to " premises 271 Cedarhurst Avenue, Cedarhurst, Long Island."

This account was forwarded to the life beneficiaries and the remainderman; to the former, accompanied by letters submitting the account for their approval and, in effect, suggesting the execution of the attached release if it proved satisfactory. One of these letters contained the statement: " You will understand, of course, that we are representing the trustee and that while we would be

very glad to make any further explanation or discuss the matter with you, if there is any doubt in your mind as to your legal position, you should consult your own counsel." The letter to the other life beneficiary contained a statement to substantially similar effect. As respects the remainderman, the account was submitted to its attorneys and was apparently subjected to an intensive scrutiny extending over a protracted period, as is indicated by the voluminous correspondence between the two sets of attorneys, in one of which express inquiry was made respecting this particular property, reciting its exact location.

The life beneficiaries and remainderman all executed, acknowledged and delivered the receipt and release appended to the account. This is a detailed document containing a number of recital clauses, among which may be noted the following: "Whereas, said Hart Hirshfeld, Lawrence Hart and Robert Hart and The New York Foundation have requested that the account of said trustees be settled out of court in order to avoid the expense of a judicial settlement thereof," and "Whereas, said Hart Hirshfeld, Lawrence Hart and Robert Hart and The New York Foundation do hereby represent that said account has been examined and found by each of them to be in all respects correct and true."

The instrument thereupon recites that the parties "do hereby approve, ratify and confirm the aforesaid account" and "do hereby approve, ratify and confirm all the acts and transactions of said trustees set forth in said account, and do hereby accept the same as an account stated final and conclusive." It concludes with a broadly worded general release of all claims, "liability, responsibility or accountability, for or by reason of the acts and transactions of said trustees * * * as set forth in said account and for or by reason of any matter or thing growing out of or in any way connected with their said trusteeship or said estate."

Despite these facts and transactions, the surviving life beneficiary, the legal representatives of the other and the remainderman have interposed objections to the account predicated solely on the improper acquisition of the mortgage on the noted property which was located outside the city of New York. No assertion has been made that any false or misleading representations were made by the trustee to induce the approval of the account and the execution of the release; indeed, so far as the remainderman was concerned, it was effectively insulated by its attorneys from any contact with the trustee whatsoever. As to the life beneficiaries the only solicitation by the trustees, if it is capable of such appellation, was the letter of transmission of the account for what it was worth, with the suggestion that if it was satisfactory the acceptance and release

be executed, but if they entertained any doubt on the subject, they would best consult their own counsel.

The principles have repeatedly been affirmed that " The courts of our State have generally recognized the validity of settlements in estates in the absence of bad faith or fraud and have given such settlements vigorous support " (O'BRIEN, S., in *Matter of Beresford*, 146 Misc. 140, 145), since " Thereby the expense and delay of a formal accounting proceeding are avoided. Where the agreement is made fairly, and without coercion, imposition or misrepresentation, it is conclusive upon the party signing it." (FOLEY, S., in *Matter of Blodgett*, 171 Misc. 596, 598.) " Whereas no judicial decree was entered settling his accounts, this was replaced by a general release which, unless vacated or impeached, possessed an equivalent effect." (*Matter of Stemmler*, 171 Misc. 318, 320.) (See, also, *Fisher* v. *Fisher*, 253 N. Y. 260; *Matter of Cook*, 244 id. 63, 69; *Matter of Pruyn*, 141 id. 544; *Matter of Wagner*, 119 id. 28, 37; *Slater* v. *Slater*, 208 App. Div. 567; affd., 240 N. Y. 557; *Matter of Waters*, 183 App. Div. 840; *Matter of Tyrrell*, 115 Misc. 714; affd., 198 App. Div. 1001; *Matter of Crowe*, 139 Misc. 648, 651; *Matter of Voislawsky*, 135 id. 877, 878.)

There is no essential difference between a settlement and release between a fiduciary and his *cestui* to distinguish the transaction from a similar one between two ordinary individuals except that the courts will conceivably be more alert to seek out evidences of overreaching or misrepresentation on the part of a trustee. In any such transaction the *cestui que trust* must realize from its very nature that the fiduciary is acting in his own interest and that dealings in respect of the subject-matter are at arm's length. In either relation, the person with whom the transaction is conducted is bound to take notice of those things which would be apparent to any intelligent and attentive person. So long as there is no suppression of material facts, no fraud, imposition or overreaching, the beneficiary has no more right to complain by reason of a failure of the trustee to point out possible bases of objection to an account which is settled by release than he would have respecting one adjusted before the court.

The limits of the duty of a trustee in this connection were forcibly emphasized by Surrogate DELEHANTY in *Matter of Schoenewerg* (160 Misc. 819). His cogent comments in that case on the general situation here in issue will well repay careful re-reading. His result, sustaining the principles hereinbefore discussed, was reversed by the Appellate Division (252 App. Div. 745) by a divided court, but sustained by the unanimous judgment of the Court of Appeals (277 N. Y. 424, 428) with the presently pertinent observation:

"No claim was made by the petitioner of actual imposition practiced upon him. * * * In the account accepted and retained by him was a schedule which showed that the mortgage investment in question had been defaulted and was in process of reorganization. No proof of any misrepresentation or of refusal to disclose any fact was offered.

"This being the case, the petitioner may not be heard to say that the accounting trustee owed to him as remainderman an affirmative duty to detail an open state of facts as to which he was content to waive inquiry. There can be no legal implication of impropriety in such a business transaction."

The objectors seek to distinguish this pronouncement on the ground that it related to a final settlement of accounts and not, as in the present instance, to one which would be followed by a further administration of the trust. This position is untenable. Both related to settlements of accounts, and the essential principle is applicable to both that a settlement of accounts by release is just as effective as one by judicial decree. Either may be impeached and the inquiry reopened upon a demonstration of fraud or other inequitable conduct on the part of the accountant, but in the absence of such demonstration, each method is equally effective with the other for the purpose of lowering the curtain on past transactions.

The objections will be overruled, with costs.

Enter decree on notice in conformity herewith.