In the Matter of the Estate of JOHN H. SCHRODER, Deceased.

Surrogate's Court, Kings County, July 28, 1941.

*Cain, Gruning & Cain*, for the executrix, petitioner.

*Baar, Bennett & Fullen* [*John P. Hurley* of counsel], for Josephine A. Schroder, legatee, objectant.

WINGATE, S. The ultimate effect of the objections which have been interposed to the present account is an attack upon the capacity of action of the accountant as executrix for the period between the entry of the decree on the executorial accounting on March 23, 1917, and February 15, 1941, which is the date of verification of the present account.

Singularly enough, although the controversy between the parties hinges preponderantly upon the terms of the will, neither of them has referred to it in any way in the course of the earnest arguments which have been addressed to the court. In order that the composite situation may be clarified, reference thereto and to the salient facts relative to the history of the estate are necessary.

The present testator, John H. Schroder, died on April 6, 1908. His will was admitted to probate two months later. By its terms substantially his entire estate, real and personal, was given to his widow Catharine, upon a legal life estate with power to consume and to sell any part thereof in her absolute discretion. She was also absolved from any obligation to account and was appointed sole executrix. She duly qualified in her fiduciary capacity, presumably enjoyed her gift during life, and died on September 29, 1912.

Following her death, the remainder directions of the will came into operation. So far as presently material, these are found in the " fourth " item as modified by the " first " item of the codicil. Superimposing the latter direction upon the former, this disposition reads:

"*Fourth*. After the death of my said wife, I give, devise and bequeath all the Rest, Residue and Remainder of my Personal Property and Real Estate as follows: one-sixth part thereof, to my daughter, Henrietta Lemken * * * absolutely and forever; another one-sixth part thereof, to my daughter, Carrie G. Schroder * * * absolutely and forever; another one-sixth part thereof, to my daughter, Meta F. Larson * * *; another one-sixth part thereof, to my son, Albert E. Schroder * * * another one-sixth part thereof, I give, devise and bequeath to my executors hereinafter named, in Trust, however, * * * to * * * collect the rents * * * therefrom, and after the payment of all necessary * * * expenses thereon to pay the balance thereof to my son, Martin F. Schroder, during his natural life; and upon the death of my said son * * * I direct my Executors or Trustees, to pay the said one-sixth part * * * to the children of my said son * * * absolutely and forever."

The final one-sixth, after the deduction of certain sums aggregating $776.58, was erected into a trust for the benefit of the children of testator's deceased son, George W. Schroder, with directions for expenditure of income for their support, and division of the principal among them when the youngest attained the age of twenty-one years.

The only additional presently material direction is contained in item " tenth," which reads: " Upon the death of my said wife, I hereby nominate, constitute and appoint my said daughters, Henrietta Lemken * * *, Carrie G. Schroder and my son, Albert E. Schroder, as the executors of this my Last Will and Testament, and hereby authorize and fully empower them or such of them as shall qualify under this my Last Will and Testament, and the survivor of them, to sell, after the death of my said wife, either at public or private sale, all or any part of Real Estate, at such time or times as they deem proper and for the best interest of my Estate, and to execute, acknowledge and deliver to the purchaser or purchasers thereof, good and proper deed or deeds therefor." By the codicil the same persons were named trustees of the two trusts hereinbefore noted.

Following the death of the widow on September 29, 1912, the three named executors qualified and received letters. They accounted as of October 1, 1916, and their accounts were settled by a decree dated March 23, 1917. This account showed assets of $91,796.24 in their hands, the payment of all which was directed in that decree. For some reason which is not apparent, these items are again included in the present account and their disbursement pursuant to the directions of the decree is shown.

The trust for the children of George Schroder was duly erected and was closed on February 21, 1920, by the payment of principal and income to the *cestuis que trustent*. For some reason all of this is set forth in the present account despite the significant entry as of February 21, 1920, " John V. Cain, Esq — Legal services in terminating trust — $15.00."

It is to be noted in this connection that this is a voluntary and not a compulsory accounting.

As of the date of the closing of the account in 1916, real property of which the decedent had been the owner, consisting of sixteen parcels having an assessed valuation of $90,700, had not been sold.

Aside from the statement hereinbefore noted, the balance of the extremely voluminous account relates to receipts in connection with the sale of these parcels of real property, the last entry of this variety appearing as of February 27, 1940, items of rentals collected from, and disbursements made in, their management; investment and reinvestment of the moneys received on their sale; income receipts and disbursements and payments of principal and income to and for the benefit of the persons who were named as devisees, and in the management of the properties and reinvestment of the proceeds. The schedules comprise sixty-nine pages, a number of them being double the usual size.

In determining for its own information the propriety of passing upon this account, which is obviously essential in the adjudication of the objections which have been interposed thereto, the court deems the " fourth " and " tenth " items of the will of essential moment.

The power of sale included in the latter of these two items is obviously not mandatory, but discretionary only. It follows that no equitable conversion of the remaining real property occurred and that this realty devolved direct to the devisees under the will. (*Barber* v. *Terry*, 224 N. Y. 334, 338; *Jones* v. *Kelly*, 170 id. 401, 409; *Matter of Braasch*, 206 App. Div. 96, 100; *Scholle* v. *Scholle*, 113 N. Y. 261, 270; Butler, N. Y. Surrogate Law & Practice, § 2127.) This is the more obvious in the present instance by reason of the language contained in item " fourth " of the will in which, by words of present gift, the testator expressly devised his real property to his residuary donees subject to the life estate of the widow. By reason of this fact, these lands became vested in them immediately upon the death of the testator under the express terms of the will which operated as a conveyance in this regard. (*Matter of Miller*, 257 N. Y. 349, 356; *Waxson Realty Corp.* v. *Rothschild*, 255 id. 332, 336; *Corley* v. *McElmeel*, 149 id. 228, 235; *Alfred University* v. *Frace*, 193 App. Div. 279, 284; *Milliner* v. *Morris*, 219 id. 425, 427.)

Assuming for the moment that the discretionary power of sale accorded by the " tenth " item of the will could survive the judicial settlement of the accounts of the executors, which not only disposed of all of the personal assets of the estate but purported to effect a final settlement of their connection therewith, it may not be extended beyond its express terms which were merely for the sale of the real property itself. Neither holding, rental nor management was authorized and as a matter of law such acts were unauthorized to the executors in their capacities as such once title had vested in the devisees. Any rentals belonged to the devisees in their individual capacities and if, either pursuant to express agreement or tacit acquiescence, they permitted the former executors to act for them in this regard, it was purely pursuant to an express or implied *inter vivos* trust or agency agreement with which this court possesses no concern and over which it has no jurisdiction. (*Matter of Miller, supra; Matter of Veniero,* 165 Misc. 293, 294; *Matter of James,* 173 id. 1042, 1046; affd., 262 App. Div. 703; *Matter of Baruch,* 176 Misc. 344, 346.)

With the elimination of the schedules relating to rental and management of the real properties prior to their sale, the question becomes relevant as to the extent, if any, to which the account contains items of which this court may or should take judicial cognizance. Its other entries relate almost exclusively to four varieties of items, namely, *first*, to personal assets reported in the former account, the distribution of which was directed by and effected· pursuant to the former decree; *second*, dealings with the principal of the trust which was apparently closed by agreement on February 21, 1920; *third*, sales of the real properties, the ownership of which vested in the devisees pursuant to the terms of the will; and *fourth*, details of reinvestment of the proceeds of such sales and of the management and payment of income received on such reinvestment securities.

It is wholly obvious that the first in this enumeration is improper of inclusion in this account.

When payments are directed by a decree it is usually presumed that they will be made. If the fiduciary defaults in this regard, enforcement by usual process is available to the intended recipient. If the fiduciary desires a record of compliance, a satisfaction may be secured and filed. In either event, the inclusion of such items tenders no issue, since if payment has not been made, a second direction to perform an act previously decreed would not be proper of issuance. The first noted class of entries in the account was, accordingly, improper of inclusion in the account and presents no justiciable assertion.

Respecting the entries relating to the terminated trust, the situation is substantially identical. It is wholly obvious that the mutual rights and obligations of the trustees and *cestuis* were informally adjusted in 1920. No present attack is made on that settlement which was of the variety which has frequently been declared to be favored by the courts. (*Matter of Voislawsky*, 135 Misc. 877, 878; *Matter of Beresford*, 146 id. 140, 146; *Matter of Blodgett*, 171 id. 596, 598, *Matter of James*, 173 id. 1042, 1045; affd., 262 App. Div. 703; Butler, N. Y. Surrogate Law & Practice, § 2732.)

It has frequently been determined that such an informal adjustment possesses the same force as a decree of judicial settlement and is impeachable only for one of the grounds which would warrant the vacatur of a decree. (*Fisher* v. *Fisher*, 253 N. Y. 260; *Matter of Cook*, 244 id. 63, 69; *Matter of Pruyn*, 141 id. 544; *Matter of Wagner*, 119 id. 28, 37; *Slater* v. *Slater*, 208 App. Div. 567; affd., 240 N. Y. 557; *Matter of Waters*, 183 App. Div. 840; *Matter of Salomon*, 175 Misc. 264, 267; *Matter of Baruch, supra.* See, also, *Matter of Schoenewerg*, 277 N. Y. 424, 428.) This principle has heretofore been applied wholly to the position of beneficiaries. For obvious reasons, the binding effect of the settlement and the estoppel arising therefrom must be mutual.

By reason of this principle the items reflected in the account respecting the trust were settled in 1920 in the same manner as if a decree of judicial settlement had then been entered respecting them. In the absence of a vacatur of such settlement on a demonstration of fraud or other similar cause they are incapable of presenting an issue for present litigation and are consequently as improper of inclusion in the account as are the items to which reference was last made.

Turning to the fourth class of items enumerated, except in their relations with the trust which was closed in February, 1920, the accountant and her cofiduciaries were merely executors — not executor-trustees. Investing funds, except for brief periods or under unusual circumstances such as directed deferment of the time of payment of a legacy, is not the function of such a fiduciary. This is particularly potent in the present connection. The funds received were derived from a sale of property which was fully vested in the ownership of those named as the residuary devisees under the will. All estate necessities for any retention had long since passed. The acts of investment, reinvestment and management were accordingly affected by the identical considerations hereinbefore developed respecting their management of the real property. The acts of the former fiduciaries were those merely of

agents or trustees of an *inter vivos* trust under arrangement with the owners of the proceeds, and for the reasons previously developed, this court has neither the inclination nor authority to scrutinize their acts or pass upon their transactions.

There remains for consideration the propriety of scrutiny by this court of the acts of the accountant and her associates in the sale of the real property which took place in part almost a quarter of a century after the estate proper had vested in absolute owner-ship and had been judicially settled. It is extremely questionable whether the power of sale as accorded by the will, which permitted the executors so to act " for the best interest of my estate," is capable of interpretation as warranting action by the executors when all of the assets of the estate both personal and real had reached their ultimate owners as a matter of law    In the present instance, the estate, as such, was settled by the decree of 1917. All of its assets were then known, its distributees and their shares determined, and its property fully distributed. The accountants had no further assets in their hands. The estate was closed    If, under such circumstances, the owners of the real property wished either severally or jointly to authorize certain of their number to liquidate their property on their behalf, it was a private *inter vivos* arrangement the propriety of action under which this court may not adjudicate.

This court is not to be understood to say that in no case will a discretionary power to sell real estate survive the complete pay-ment of all creditors and the distribution of its personal assets in their entirety. All which is presently determined is that under the demonstration made by the present record, it is wholly obvious that subsequent to the entry of the decree of 1917, the fiduciaries, except in respect of the express trust which was settled in 1920, acted not as executors but as agents or trustees of an *inter vivos* trust and that their acts in their entirety are not subject to the scrutiny or judicial action of this court.

It follows that the proceeding for judicial settlement will be dismissed in its entirety.

Enter decree on notice in conformity herewith.