In the Matter of the Accounting of THOMAS B. GILCHRIST et al., as Trustees under an Indenture of Trust between HELEN H. O'MALLEY, Grantor, and Said Trustees.

Supreme Court, Special Term, Westchester County, September 3, 1954.

*Bleakley, Platt, Gilchrist & Walker* for trustees, petitioners.

*Simpson, Thacher & Bartlett* for Helen H. O'Malley, grantor, individually and as general guardian for infants.

*Hugh S. Coyle,* special guardian.

EAGER, J.   On December 20, 1945, the grantor Helen Hooker O'Malley executed and delivered an *inter vivos* trust indenture to Thomas B. Gilchrist and The Fifth Avenue Bank of New York, as trustees (the petitioners herein), whereby she created an *inter vivos* trust for her own benefit during life with reservation, among others not here pertinent, of the right to request and have the trustees in their " absolute and uncontrolled discretion " to pay her at any time any part or all of the principal funds; of the right to modify or revoke the trust with the written consent of the trustees, and of the right to dispose by will of the corpus at her death.   On this motion the " Seventeenth " article of the instrument is chiefly of interest and reads as follows:   " SEVENTEENTH: The Grantor, while living, shall have full power and authority at any time and from time to time to examine and approve the acts and proceedings and accounts of the Trustees hereunder, and the approval thereof by the Grantor by an instrument in writing delivered to the Trustees or Trustee then acting, executed and acknowledged by the Grantor

in form entitled to be recorded in the State of New York, shall be binding and conclusive upon any and all of the persons interested absolutely or contingently in this trust, and shall constitute a valid and effective release of the Trustees, and their heirs, executors and successors in office, with respect to all of the acts and proceedings of the Trustees in the administration of the trust, with all and the same force and effect as a decree of a court of competent jurisdiction judicially settling the accounts of the Trustees and discharging them from any and all liability with respect to their administration of the trust.''

Under the provisions of this article, it was the practice of the trustees to submit to the grantor annually a copy of their account for the current calendar year in December of each year and to request her to sign a receipt for the payments made to her during the year as shown in said account and to execute and deliver a certificate of approval of the account. In December, 1952, and again in December, 1953, accounts were submitted to the grantor with requests for a receipt and a certificate as usual. She did not execute or deliver any receipt for and approval of these payments or account, and on March 5, 1954, the trustees executed and verified a petition for judicial settlement of their acts, proceedings and accounts for the eight years from the beginning of the trust to the end of 1953, which were set forth at length in an account verified at the same time and containing a repetition of all the annual accounts theretofore submitted to the grantor by the trustees. The account contained one additional item which had not, of course, appeared in the annual accounts theretofore submitted by the trustees. It was the only item in schedule C-1 of the account and was an unpaid liability of $4,000, incurred by the trustees '' for professional services rendered in this proceeding '' by the trustees' attorneys.

On the 8th of March, the order to show cause herein, why an order should not be made and entered judicially settling and allowing the intermediate account, was presented to a justice of this court who signed it and it was apparently served on the grantor and others interested on the 9th of March, and also later served on Hugh S. Coyle, Esq., who was designated by the order to receive service thereof on behalf of infant parties. Meanwhile, at some time on the 8th of March, 1954, the receipts and certificates of approval for the annual accounts for the calendar years 1952 and 1953, which up to then the grantor had not signed, were delivered to the petitioners duly signed

and acknowledged by her. The court is satisfied, however, that the account was prepared (it is verified March 5, 1954) and these proceedings instituted in good faith in the belief that the certificates of approval for said years would not be forthcoming.

The grantor now moves to dismiss the petition herein and this proceeding for judicial settlement. She contends that, since pursuant to the power vested in her by the instrument, she has approved all the accounts submitted to her by the trustees and these are identical with the account for which settlement is sought on this proceeding, the petition and the proceeding should be forthwith dismissed. The argument of the trustees runs that they are not bound to accept as final the receipts and approvals she has given and are entitled, as a matter of legal right, to account to the court for all the items upon which they have received acquittances from her, to have their attorneys paid and to receive a judicial discharge in relation to all their acts and proceedings included therein. Principally presented are the questions: (1) Could the grantor legally reserve the right and power to approve the accounts and discharge the trustees nonjudicially by an acknowledged instrument and so bind all remaindermen and the trustees? and, (2) Did the receipts and approvals executed, acknowledged and delivered by her validly and effectively settle the accounts and discharge the trustees from liability, or are they also entitled to a judicial settlement by the court on their application, with a decree discharging them from liability?

The grantor cites two cases which seem definitely to establish the legal right of the grantor of an *inter vivos* trust to retain the power to settle an account nonjudicially by the execution and acknowledgment of a written instrument and to discharge the trustees thereof from liability in a manner to bind all others interested including the trustees themselves. These two cases are, in fact, about all the law directly in point. They are *Matter of Central Hanover Bank & Trust Co. (Momand)* (176 Misc. 183, affd. 263 App. Div. 801, affd. without opinion 288 N. Y. 608) and *Matter of Fifth Ave. Bank of New York* (75 N. Y. S. 2d 888).

These particular decisions do not, of course, present instruments using exactly the same language as the instrument under scrutiny here, nor, indeed, does the language in either match that of the other, but to paraphrase what the court said in the *Fifth Ave. Bank* case (*supra*, 889) in comparing the instrument before him with that in the *Central Hanover Bank & Trust Co.*

case, "While the language of the pertinent" provisions "in the" instruments "considered in the cited" cases was less "comprehensive, the intention of the settlor is just as clearly discernible in the present trust agreement." Here, in the indenture now before the court, it is clear beyond all doubt that the parties intended to provide for an informal method of settling the accounts of trustees and completely and finally discharging them on compliance with such method.

In creating the trust out of her own property, the grantor had the right, by her indenture, to impose any and all lawful conditions and limitations, and any interest the remaindermen may have would be subject to the same. In her indenture, the grantor expressly reserved unto herself the "full power and authority *at any time* and from time to time to examine and approve the acts and proceedings and accounts of the Trustees hereunder", and it is provided that her approval of the same by formal acknowledged instrument "shall be binding and conclusive *upon any and all of the persons interested* absolutely or contingently in this trust, and shall constitute a valid and effective release of the Trustees * * * with respect to *all* of the acts and proceedings of the Trustees in the administration of the trust". (Italics supplied by the court for emphasis.) The wording is all inclusive, and the indenture as a whole also indicates that there was to be no limitation upon the power and authority of the grantor in this connection. The formal approval by the grantor and consequent release of the trustees was to be and is effective as to "all" acts and proceedings of the trustees including their discretionary acts in permitting withdrawals of principal or the revocation or modification of the trust, as well as their more or less purely administrative acts in holding the trust assets and collecting and paying out the income therefrom. Her formal approval of any or all of such acts was intended to be and made final, and the provisions of the instrument in this connection are binding on the remaindermen. Therefore, the court readily overrules the contention of the special guardian that the remaindermen would nevertheless have a right to have the court review the acts of the trustees, and in particular, their discretionary acts permitting withdrawals of principal.

Accordingly, therefore, the first question is to be answered in the affirmative and it is held that the provisions of article Seventeenth of the trust agreement here under scrutiny were legal and valid and fully empowered the grantor to settle the accounts of her trustees nonjudicially by the execution and

receipt and approvals of accounts presented by them to her informally and thereby to bind everybody interested, including the trustees and the remaindermen.

In approaching the second principal question before the court, it should be observed here that article Seventeenth does not profess in any way to limit the trustees to the kind of an accounting with which it deals. What it does is to authorize the grantor to settle and allow accounts informally and discharge and release the trustees as effectively as a decree of a court of competent jurisdiction could release them. Consequently, during any time while the grantor had not exercised or made a reasonable effort to exercise the power reserved in article Seventeenth, the trustees were free to proceed in the same manner in which they would have been free to proceed had article Seventeenth never been included in the agreement.

It has, of course, long been the law that an informal settlement between beneficiaries and fiduciaries in relation to accounts, acts and proceedings of the fiduciaries when made by competent adults and when not attacked for fraud or mutual mistake or some other ground upon which any contract may be attacked, is as binding and effective as a judicial decree on a judicial settlement of accounts or approval of acts and proceedings. Almost all the law on the subject, however, appears in cases where beneficiaries or other persons interested have subsequently sought to attack these nonjudicial settlements and have haled before some competent tribunal the fiduciaries who, for years, had regarded as settled and definitely discharged all liability or accountability with which the nonjudicial settlement dealt. There are, of course, a great many of these cases. One of the late ones is *Matter of James* (173 Misc. 1042, affd. without opinion 262 App. Div. 703, and affd. again without opinion 287 N. Y. 645). See, also, *Matter of Schoenewerg* (277 N. Y. 424); *Matter of Kirby* (90 N. Y. S. 2d 324), and *Matter of Salomon* (175 Misc. 264). A very forthright and leading case is *Matter of Wagner* (119 N. Y. 28).

It is noted that it is a rare fiduciary who wishes to question the earlier settlement of his own accounts and the grantor is able to cite only one case reasonably in point. It is *Matter of Schroder* (176 Misc. 1024). There, after the termination of a legal life estate of the entire property in a widow, the estate was divided into six parts and the three executors who qualified and assumed office at the death of the widow were directed to hold one sixth in trust for the children of a deceased son, to expend the income for their support and divide the principal

among them when the youngest attained the age of twenty-one years. This trust was duly erected and was fully executed in February, 1920, by the payment of the principal and income to the beneficiaries. It clearly appears that the account of the executors for this trust was settled by agreement of the parties informally and nonjudicially. The Surrogate said that no attack had been made on the settlement, which was of a kind favored by the courts. He then added (p. 1029): "It has frequently been determined that such an informal adjustment possesses the same force as a decree of judicial settlement and is impeachable only for one of the grounds which would warrant the vacatur of a decree". He cites a long list of authorities for this and then adds: "This principle has heretofore been applied wholly to the position of beneficiaries. For obvious reasons, the binding effect of the settlement and the estoppel arising therefrom must be mutual. By reason of this principle the items reflected in the account respecting the trust were settled in 1920 in the same manner as if a decree of judicial settlement had then been entered respecting them. In the absence of a vacatur of such settlement on a demonstration of fraud or other similar cause they are incapable of presenting an issue for present litigation and are consequently as improper of inclusion in the account". What gives this case force is the statement of Surrogate WINGATE (p. 1027), "It is to be noted in this connection that this is a voluntary and not a compulsory accounting."

There are no later cases following the holding of the Surrogate, but it is such good sense that no one without a special axe to grind would even question it. Accordingly, the second question is answered by a holding here that the receipts and approvals executed, acknowledged and delivered by the grantor to the trustees finally settled those accounts and effectively released and discharged the trustees from liability in relation to the things embraced in them, and accordingly, they cannot here present an issue for present litigation, to use the words of Surrogate WINGATE.

Incidentally involved here is the question of whether or not the trustees of an *inter vivos* trust must wait any minimum period after the settlement of an intermediate account before they may apply to the court for another settlement of an account of subsequent proceedings, and, if so, what is the minimum period. No cases have been found to directly answer the question. It is, however, true that for many years testamentary trustees have been permitted to apply annually for judicial

settlement under paragraph b of subdivision 3 of section 261 of the Surrogate's Court Act. True, under the statute, the Surrogate still has discretion to entertain or not entertain the application after the lapse of one year and, in general, trustees do not apply more often than every five years, because the policy is not to burden estates unduly with costs of quickly successive accountings. There are, however, substantial dicta indicating that the courts have regarded section 261 of the Surrogate's Court Act, in relation to testamentary trustees, as authority for a right in testamentary trustees to account annually and receive a judicial discharge. Judge DELEHANTY of the New York Surrogate's Court says this in passing: "Since trustees may account annually if they choose and since they are not held to an anniversary date but may select any date they choose so long as it is at least twelve months after the date of their next prior account" (*Matter of Mohr*, 167 Misc. 523, 524). Surrogate CRIBB of Ontario County has this to say in *Matter of Richards* (10 N. Y. S. 2d 510, 512): "No account of the petitioner has been judicially settled within one year preceding this application. Under such circumstances we believe the proceeding falls within the provisions of Section 261 of the Surrogate's Court Act, and we entertain the application accordingly. See Matter of Cole's Estate, 157 Misc. 609, 285 N. Y. S. 367."

Of course, in each of these cases, many years had actually elapsed since the last accounting, but the Surrogates expressly rest the right to account on the statute. They seem to recognize a legislative policy of a minimum of one year in relation to testamentary trustees. There seems to be no similar provision to regulate trustees of *inter vivos* trusts but there can be little doubt that without any valid reason for a distinction on this subject between the two kinds of trustees, this legislative policy should be recognized by the Supreme Court in its dealing with *inter vivos* trusts.

Here, the analogy of the rule for testamentary trustees is supported, and, I believe, strongly indicated by the parties' practical interpretation of article Seventeenth of the instrument in their dealings with each other. They apparently thought, and still think, the trustees should account annually and be discharged annually, and I conclude, therefore, that the trustees had a right, after the lapse of one year, to seek an accounting and discharge from the court, *if they could not obtain one from the grantor*. Thus, although the trustees had been fully discharged from all liability for the years before 1952, by the receipts and approvals executed and delivered to them thereto-

fore, the omission of the grantor to receipt and approve promptly, or disapprove, for more than a reasonable time, in relation to the accounts submitted to her in December, 1952, and in December, 1953, for those current years, authorized them to prepare for an accounting for those two years, to retain counsel and incur liability for the cost of their services. When, however, the grantor delivered to them the executed receipts and approvals on the 8th of March, 1954, although she could not thereby undo what her neglect had theretofore brought about, it is true that she could stop further proceedings. Upon the delivery of the receipts and approvals, the accounts for 1952 and 1953, were thereby fully, nonjudicially settled and allowed and the trustees discharged in relation to their contents, but the court should make some allowance to the trustees for the services of their attorneys in the preparation of the accounts for 1952 and 1953, and the preparation of other papers and other proceedings herein to date. A reasonable allowance to the special guardian is also in order.

The determination of the court, therefore, is that this proceeding be and the same hereby is discontinued but it is further ordered and directed that there be paid out of the estate, a reasonable allowance to the attorneys for the trustees and the special guardian and the same will be fixed on the settlement of the order hereon.

Submit order on notice.