John D. Bennett, S.
In this proceeding to revoke letters of administration and for an accounting, the defense consists of two general releases obtained from Frank Stella, the petitioner. A preliminary hearing has been held to determine the validity of these releases.
The basic problem clearly presented here is the necessity of reconciling two important requirements governing the conduct *937 of representatives. On the one hand, there is the salutary rule that private settlements between fiduciaries and beneficiaries should be encouraged by the courts; on the other, the requirement that a fiduciary satisfy the stringent requirements which the law imposes on one who stands in a trust relation to others.
In Matter of Salomon (175 Misc. 264, 267) the court synthesized the favor upon which private settlements of fiduciaries are looked: “ The principles have repeatedly been affirmed that ‘ The courts of our State have generally recognized the validity of settlements in estates in the absence of bad faith or fraud and have given such settlements vigorous support’ (O’Brien, S., in Matter of Beresford, 146 Misc. 140, 145), since ‘ Thereby the expense and delay of a formal accounting proceeding are avoided. Where the agreement is made fairly, and without coercion, imposition or misrepresentation, it is conclusive upon the party signing it.’ (Foley, S., in Matter of Blodgett, 171 Misc. 596, 598.) ‘ Whereas no judicial decree was entered settling his accounts, this was replaced by a general release which, unless vacated or impeached, possessed an equivalent effect.’ (Matter of Stemmler, 171 Misc. 318, 320.) (See, also, Fisher v. Fisher, 253 N. Y. 260; Matter of Cook, 244 id. 63, 69; Matter of Pruyn, 141 id. 544; Matter of Wagner, 119 id. 28, 37; Slater v. Slater, 208 App. Div. 567; affd. 240 N. Y. 557; Matter of Waters, 183 App. Div. 840; Matter of Tyrrel, 115 Misc. 714; affd. 198 App. Div. 1001; Matter of Crowe, 139 Misc. 648, 651; Matter of Voislawsky, 135 id. 877, 878.) ”
In a prior decision in this matter (13 Mise 2d 686) this court elaborated on the burden placed on the fiduciary to demonstrate the fairness of transactions between the estate representative and the beneficiaries. In Bogert on Trusts and Trustees, the author states (Yol. 4,' § 943, pp. 154-155): “ The position of the trustee is the same with regard to releases from the cestui to him as with regard to any other direct dealing between him and his beneficiary. The court is suspicious of the transaction because of the superior position of the trustee, and it requires that he demonstrate clearly that fairness demands that the release stand.”
In every case the ultimate duty of the fiduciary is to render to the beneficiaries an accounting in some form. The nature of the accounting depends on the nature of the estate and the circumstances present. Whether oral or in writing, the accounting should be complete unless the opportunity for an accounting is fairly made to a cestui and he affirmatively waives his right. It would appear obvious, therefore, that an estate representative acts at his peril if he relies on a general release without evidence *938 of an appropriate accounting, oral or in writing, or of the cestui’'s refusal or failure to avail himself of such an accounting. Due consideration must be given to a cestui sleeping on his rights and thereafter attacking a release. This however would be only one circumstance upon which the validity of a release would be judged.
It is significant that in each reported case in which releases have been upheld, an accounting was given usually in a fairly comprehensive and written form. In the leading case of Matter of Schoenewerg (277 N. Y. 424, 427) the Court of Appeals stated: “ Officers of the trustee thereupon submitted to him an account of their management of the trust during the fifteen years of its existence. This document was in form such that it would have been received for filing in the Surrogate’s Court.” The court held there was no duty on the part of the trustee “ to detail an open state of facts as to which [the remainderman] was content to waive inquiry.” (P. 428.)
In Matter of Salomon (175 Misc. 264, 265, supra) the following appears: “ In the late spring and early summer of 1939 the attorneys for the trustee prepared a full accounting of its transactions to and including the 26th of October, 1936, in a form which would have been acceptable upon a judicial settlement of its accounts.”
Matter of Blodgett (171 Misc. 596, 597) contains this statement : “ Subsequently, on May 31,1932, he executed and acknowledged a formal instrument wherein he approved the account and accepted the itemized statement of principal and income of the account ‘ as true and correct.’ The instrument also contained a formal and complete release of any liability of the trustees under the will or the trust relating to the acts of the trustees to and including the date of his majority on May 15th, 1932.”
Although Matter of Rees (177 Misc. 812) contains dictum to the effect that a “release alone constitutes an effective bar # * * to compel an accounting ’ ’, citing for this proposition Matter of Schoeneioerg (277 N. Y. 424, supra), a proposition for which the case does not necessarily stand, as previously pointed out, the facts there show that the estate was terminated by means of a “ written agreement ”.
In Matter of James (173 Misc. 1042, 1043) the agreement of release together with “ the account were forwarded to the objectant with a letter urging her to examine the provisions carefully ’ ’.
In Matter of Voislawsky (135 Misc. 877) a “ written account, accurately setting forth each item of the assets of the estate and *939 the receipts and expenditures of the executor, was delivered to the petitioner ”.
In the light of the foregoing, the facts pertinent to this case can be examined and the correct principles applied.
Giovanni Amuso died on August 31, 1956. He left surviving him eight nieces and nephews, Frank Stella, Hugo Stella and Theresa Imerti, children of a predeceased sister of decedent; Catherine Biondo, Olga George, Mario Stella and Joseph Stella, also children of a predeceased sister, and Frank Amuso, the son of a predeceased brother.
Joseph Stella was appointed administrator by this court on November 7, 1956, after all his cousins had executed renunciations.
All the releases are in two groups in point of time. The first group was executed in October, 1956, before the appointment of Joseph Stella as administrator, and the second during the latter part of January, 1957, after his appointment. All the eight nieces and nephews signed two general releases, with the exception of Frank Amuso, who refused to execute the first general release in October, but later executed a general release dated February 11, 1957.
During the hearing the administrator offered in evidence the releases of Catherine Biondo, Olga George and Mario Stella. These releases, executed by persons other than the petitioner, are releases of persons not parties to this proceeding (Surrogate’s Ct. Act, § 41), and have no probative value as to the validity of the releases executed by petitioner. Accordingly the motion to strike out these releases is granted.
The decedent’s family as represented in this proceeding is divided into three distinct groups: the petitioner, his brother and sister; the respondent, his brother and sisters, and Frank Amuso.
Prior to the death of Giovanni Amuso, none of the nephews and nieces were interested in him, nor was he concerned about them with the exception of respondent, who had frequent visits from deceased during approximately eight months prior to his death, and his brother, Dr. Mario Stella, who was his phyiscian from November, 1955 up to his death. During this time Dr. Stella expended several thousand dollars for care and treatment of his uncle. In contrast to this, according to the testimony of Theresa Imerti, petitioner’s sister, neither she nor her brothers, the petitioner and Hugo Stella, had seen the deceased for 26 years prior to his death.
After hearing of their uncle’s death on August 31,1956, Hugo Stella called respondent and stated to him, ‘ ‘ we had a lawyer *940 on the case ”. This occurred in late September, 1956. As a result of this conversation an appointment was made for a meeting, which took place about October 12,1956 at respondent’s home, between himself and petitioner and Hugo and Dr. Mario Stella. All the persons at this meeting were competent individuals and members of skilled'occupations or professions. The petitioner, Frank Stella, is a pharmacist and a notary public of this State; Hugo Stella, his brother, is a stereotyper; the administrator, Joseph Stella, is an accountant, and his brother, Dr. Mario Stella, is a physician and surgeon.
The petitioner admits that while at this meeting he was told that there was very little money in the estate and that substantial bills had to be paid. Some of the amounts of the bills were indicated. He was also told of the contents of his uncle’s safe-deposit box and their values. Further, he testified that he was informed that decedent gave all his money to respondent, and therefore the petitioner would receive some share, but not a large one, in the money left by his uncle when he died. Later he admits he knew “ through rumors ” his uncle’s estate was valued at approximately $20,000 to $25,000. This testimony is corroborated by his brother, Hugo, called as a witness for the petitioner. Despondent’s testimony concerning this meeting is substantially the same as that of petitioner and his brother.
Following this conference, the petitioner dispensed with the services of his attorney. On October 17, 1956, the petitioner executed a renunciation of his rights to act as administrator, and consented to respondent’s appointment as administrator, which occurred on November 7, 1956. Thereafter, on October 23, 1956, petitioner executed a general release to “ Joseph Stella, personally or in his capacity as Executor and/or Administrator of the Estate of Giovanno Amuso ”. Later in January, 1957, a second release was sent to petitioner and his brother and sister, accompanied by a check in the sum of $1,300 payable to the three of them. This release was executed by petitioner on January 16, 1957. The check was cashed and divided equally between the petitioner, his brother Hugo, and sister Theresa. After executing the January, 1957 release, petitioner met his cousin, Frank Amuso, and as a result of that chance meeting retained counsel and instituted this proceeding.
At the meeting of October 12, 1956, the parties discussed specifically all matters pertaining to the estate. Frank Stella had retained an attorney prior to this meeting, and discharged him immediately thereafter. The evidence shows that he had knowledge of the amount of money possessed by his uncle at his death. He was informed that the estate was very small, that *941 there were many bills, and even informed as to the amounts of some which Joseph Stella had available at that time. There is no evidence of inquiry by Frank Stella as to any reason for the estate being “ small ” or any question raised when he was informed the decedent had given all his money to respondent. Going one step further, he was so satisfied with respondent’s explanation that he signed a renunciation and then not one but two general releases. Without question he accepted his share of the check for $1,300 sent to him and his brother and sister, and thereafter cashed it. Not until some time later, after petitioner spoke with his cousin, Frank Amuso, was he overtaken by the thought that this proceeding should be maintained.
The court is of the opinion that the petitioner received the benefit of all of the pertinent and material facts and information possessed by respondent. On all the evidence, the respondent has met the burden of proof in demonstrating that the petitioner was dealt with fairly and that there was no fraud or misrepresentation incidental to the procurement of the releases. The defense of release is sustained. Accordingly, since the petitioner is not a person interested in the estate (Surrogate’s Ct. Act, § 99) the petition is dismissed.
Settle decree on five days’ notice.